### W. G. Press & Company, Appellant, v. Thomas F. Fahy et al., Appellees.

### Gen. No. 27,910.

1. CREDITORS' SUITS—*membership in stock exchange as property subject to application.* A membership in a trader's live-stock exchange is property which may be reached by a creditors' bill, and where it can be reduced to the creditors' possession, free of prior liens, may be sold, subject to the rules of the exchange, and the amount realized applied to the member's indebtedness to the complainant creditors.

2. PLEDGES—*validity of pledge of membership in incorporated exchange by indorsement and delivery of certificate.* The indorsement and delivery of a certificate of membership in an incorporated live-stock exchange by a member to his creditors to secure the payment of an indebtedness due them from him, made in good

faith, is valid under Cahill's Ill. St. ch. 77, ¶ 53, relative to bona fide pledge of a certificate of stock in any corporation for a valuable consideration, as against subsequent creditors seeking to subject the membership to payment of their claims under creditors' bill.

Appeal by complainant from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Affirmed. Opinion filed December 26, 1923.

JOHN W. ELLIS and JOHN A. BROWN, for appellant.

SIMS, WELCH, GODMAN & DEYOUNG, for appellees; JOHN ELLIOTT BYRNE, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

The complainant, W. G. Press & Company, recovered a judgment against Fahy in the circuit court of Cook county for $1,548.44, in 1920. Fahy was a live-stock trader at the Union Stockyards in Chicago and in connection with his business owned a membership in the Traders' Live Stock Exchange, a corporation, which was evidenced by membership certificate No. 384. Execution on the plaintiff's judgment having been returned unsatisfied, it filed a creditors' bill, making Fahy and the Stock Exchange parties defendant, seeking thereby to subject Fahy's membership in the Stock Exchange to the payment of his indebtedness to the complainant. In this proceeding Fahy was enjoined from incumbering or disposing of his assets and the Stock Exchange was enjoined from transferring his membership, a receiver was appointed and duly qualified and the matter was referred to a master in chancery. In connection with the proceedings before the master, it developed that sometime before the recovery of the complainant's judgment Fahy had assigned his certificate of membership in the

Stock Exchange to Brown & St. John, a copartnership, as security for his indebtedness to them. The master having filed his report with the court, setting forth the facts and recommending that a decree be entered directing Fahy to resign as a member of the Stock Exchange and assign his certificate, the copartnership of Brown & St. John filed an intervening petition asking leave to be made a party defendant to the complainant's bill. Issue having been joined on this intervening petition, the complainant and the intervening petitioners entered into a stipulation setting forth the facts involved in the controversy between them as follows:

"That proofs are waived on issues raised by complainant's bill and the amended intervening petition filed by Everett C. Brown and Seth B. St. John and complainant's replication to said answer and that the facts on the issues raised are as follows:

"1. That on June 26, 1920, complainant recovered a judgment against the defendant, Thomas F. Fahy, for the sum of $1,548.44 in the Circuit Court of Cook County, Illinois, and that on December 9, 1920, an execution was issued on such judgment which was returned unsatisfied on December 16, 1920, as alleged in complainant's bill.

"2. That said Thomas F. Fahy is now and has been at all times since May, 1907, a member of the Traders' Live Stock Exchange and that on said date there was issued to said Fahy membership certificate in such Exchange, No. 384.

"3. The object and purposes of said Exchange and its by-laws are as set forth in the printed copy thereof attached to and forming a part hereof.

"4. That the value of the membership in controversy is $1,800.

"5. That complainant after recovering judgment as aforesaid never instituted any garnishment suit or attachment proceedings against said Fahy or his property and only through and by means of the execution so issued and its bill of complaint in this proceeding has sought to subject such membership to the payment of its judgment.

"6.   That Everett C. Brown and Seth B. St. John, copartners as aforesaid, on January 7, 1918, were creditors of said Fahy and said Fahy was indebted to them to the amount of $6,644.52, for moneys and credits advanced said Fahy in the conduct of his business as a trader and dealer in live stock at the Union Stock Yards.

"7.   That on January 7, 1918, said Fahy endorsed his name on the back of membership certificate No. 384 and delivered the same to said Brown and St. John as a pledge and as security for the payment on demand of the said indebtedness and that said Fahy thereafter continued to act as a member of such Exchange and was permitted by said Brown & St. John so to act and at all times since January 7, 1918, said Fahy has been recognized as a member of such Exchange by the officials and other members thereof and is now acting as a member of such Exchange with all the rights and privileges of membership therein.

"8.   That said certificate of membership was so assigned in blank and delivered to said Brown & St. John upon the understanding and agreement between said parties that said copartners should have a first and prior lien thereon and that in case of default by said Fahy in the payment of said indebtedness and on demand that said Brown & St. John should have the right to sell and dispose of such certificate and thereby terminate the membership of said Fahy in said Exchange and apply the market value of such certificate when so sold as a credit upon the indebtedness of said Fahy to said copartners.

"9.   That said indebtedness of said Fahy to said Brown & St. John has never been paid, but has been diminished to $2,541.48 and that there is now due and owing from said Fahy to said copartners the said last-mentioned sum.

"10.   That said Brown & St. John now hold and have possession of said certificate of membership and claim the same as a pledge and as security for such indebtedness.

"11.   That said Brown & St. John have not heretofore sold or attempted to sell such certificate and ap-

ply the proceeds of sale thereof, nor have they asked the secretary of such Exchange to transfer such certificate to any person designated by them.

"12.  The only relief sought by complainant in this proceeding is to satisfy its judgment and cause the surrender of such certificate to the receiver herein and to obtain the sale of such certificate for the purpose of satisfying complainant's judgment and the only property which complainant seeks by its bill and the proceedings herein to show subject to the payment of said judgment is said membership.  That complainant has been and is unable to locate any other assets of the said Fahy.

"13.  That complainant made no inquiry to ascertain whether such membership certificate was so pledged or encumbered or subject to lien at the time of its transaction with the defendant Fahy which resulted in the recovery of its judgment.  That Brown & St. John are in no way bound or adversely affected by the master's report in this proceeding.

"14.  Formal proof of the foregoing facts are waived by the parties to this stipulation and the issues raised upon the bill of complaint, answer in the form of an intervening petition and replication thereto, are submitted to the court on this stipulation of facts."

After hearing arguments based on this stipulation of facts, the chancellor discharged the receiver and dismissed complainant's bill for want of equity, finding the facts to be as set forth in the stipulation and further finding that "the membership in said Traders' Live Stock Exchange is not property which can be reached in this proceeding by complainant's bill." To reverse that decree the complainant has perfected this appeal.

It is our opinion that the decree entered by the chancellor dismissing the complainant's bill for want of equity was proper, not, however, for the reason that the membership in the Live Stock Exchange is not property and, therefore, cannot be reached by creditors, through the filing of a creditors' bill, but rather

for the reason that the pledge of Fahy's membership in the Stock Exchange to Brown & St. John was valid, giving them a lien thereon which was good as against the complainant.

In *Barclay v. Smith,* 107 Ill. 349, our Supreme Court, referring to a membership in the Chicago Board of Trade, said:

"When the nature and object of a certificate of membership are understood, can it, upon any reasonable principle, be said to be property? In Bouvier's Law Dictionary, the author, under the head of 'Property,' gives a definition as follows: 'The right and interest which a man has in lands and chattels to the exclusion of others.' The author also announces the rule that property, considered as an exclusive right to things, contains not only the right to use those things, but a right to dispose of them as the owner may desire. The certificate of membership is neither lands nor chattels, nor can a member dispose of his membership as he pleases. A sale can only be made to such person as the board, through its directors, may determine. If, then, a certificate of membership is property, it does not fall within the definition given, nor do we know of any definition of property within which it would fall.

"It may be said that a certificate of membership has a large value, and hence ought to be regarded as property. It is true that the board requires a person who becomes a member to pay an initiation fee of $5,000, and the evidence shows that a certificate of membership is regarded in the market as worth $4,000; but this does not change the character of the right. * * *

"There may be, and doubtless are, many privileges which a man may possess that are valuable to him, which do not fall within the definition of property, and which may be enjoyed, but cannot be subjected to the payment of debts."

The court then proceeded to hold in that case that a certificate of membership in the Chicago Board of Trade,

"is not property, but it is a mere privilege conferred upon the member, which cannot be reached and sold by the process of courts. It is a right which may be regarded as valuable, but which cannot be divested or destroyed except by the board itself, for a failure of the member to conform to the rules and regulations of the association."

Since that case was decided in 1883, apparently no case has come before the Supreme Court squarely presenting the question as to whether creditors can reach such a membership and subject it to the payment of their claims, by means of legal process, but, in the case of *Weaver v. Fisher,* 110 Ill. 146, it seems clear that the Supreme Court receded somewhat from the rule laid down in *Barclay v. Smith,* as quoted above. In the latter case the court said that it was a misapprehension to suppose that in *Barclay v. Smith* it had been held that there were no property rights of any kind in a certificate of membership in the Board of Trade, but that the court had simply held in that case that such a certificate was not "property which is liable to be subjected to the payment of the debts of the holder by legal proceedings." It is our view that in *Weaver v. Fisher,* the court was receding from the position it had taken in *Barclay v. Smith,* in which case the court had squarely said that such a membership is not property, although we recognize the fact that in *Weaver v. Fisher* the question presented was not whether such a membership might be reached by creditors, but was rather the question whether a *cestui que trust,* possessing the equitable title to such a membership, could compel the trustee in whose name the membership had been issued to assign it in compliance with the terms of the trust. This view of the effect of the decision of our Supreme Court laid down in *Weaver v. Fisher* has been expressed by the United States Circuit Court of Appeals for this circuit, *Board of Trade of City of Chicago v. Johnson,* 283 Fed. 374;

and also by the United States Supreme Court, as pointed out by Mr. Chief Justice Fuller, in *Sparhawk v. Yerkes,* 142 U. S. 1.

It is uniformly held in the federal courts that such a membership in the Stock Exchange as the one involved here is property, and that where one owns such a membership at the time he is adjudged a bankrupt, title to it will pass to the trustee, or assignee. In *Hyde v. Woods,* 94 U. S. 523, it was held that the ownership of a seat in the Stock Exchange was property, although not absolute and unqualified, but restricted by the rules of the Exchange and that in case of the bankruptcy of a member, the title to his seat would pass to his assignees and that the balance of the proceeds of its sale, remaining after the payment of the claims of the members of the Exchange, pursuant to its rules, could be recovered for the benefit of the estate. In *Sparhawk v. Yerkes,* 142 U. S. 1, it was held that while the property in such a seat or membership was "peculiar, and in its nature a personal privilege, yet such value as it may possess, notwithstanding the restrictions to which it is subject, is susceptible of being realized by creditors," citing, among other authorities, in support of this, the case of *Weaver v. Fisher, supra.* The same rule was followed by the United States Supreme Court in *Page v. Edmunds,* 187 U. S. 596. In that decision the court, in referring to some decisions intimating the contrary, remarked that they were based "upon the inability that the respective courts found in the law to transfer a title which could be insisted upon and enjoyed against the consent of the association. But that consequence, in our judgment, affects the value of a seat in a stock board, not its existence as property. The contingencies which may defeat or affect its title, or its enjoyment, will be reflected in its price, and if, notwithstanding them, a seat had a vendible value * * * it would seem that the law should have some process to reach it for the benefit of creditors." The

court then proceeded to hold that in the case of the bankruptcy of one owning such a membership or seat, the process was supplied by the Bankruptcy Act. In *Citizens' Nat. Bank of Cincinnati v. Durr*, 257 U. S. 99, the United States Supreme Court held that a membership in the New York Stock Exchange is personal property and that as such it might be made subject to taxation by the laws of the State in which the owner is domiciled. The court then said: ''That a membership held by a resident of the State of Ohio in the Exchange is a valuable property right, intangible in its nature but of so substantial a character as to be a proper subject of property taxation, is too plain for discussion. That such a membership, although partaking of the nature of a personal privilege and assignable only with qualifications, is property within the meaning of the bankruptcy laws, has repeatedly been held by this court.''

As pointed out by Mr. Justice Scholfield, in *Weaver v. Fisher, supra,* at common law, shares in stocks were held not to be chattels and also to be of such an intangible nature that there could be no change of possession and that therefore they could not be sold on execution—the same was true with regard to the interest of an inventor in an invention and of an author in the copyright of his work; and the weight of authority is in support of the view that equity has no power in ordinary cases to compel the appropriation of choses in action to the payment of their owners' debts. In Freeman on Executions (3rd ed.), sec. 425, it is said: ''* * * There are certain intangible rights and interests susceptible to voluntary transfer, but from their intangible character, not capable of being assessed and sold under execution. Instances of this kind are the rights and privileges secured to inventors by the granting to them of letters patent and the right to membership in a stock board or exchange or like body. It is now quite well settled that all these may be subjected to execution through the

instrumentality of creditors bills,'' citing a number of decisions including *Beidler v. Crane,* 135 Ill. 92.

The question of the property status of a membership in an incorporated association such as the Board of Trade or a Stock Exchange, which seems to have been first presented to the courts of this State in 1883 in the case of *Barclay v. Smith, supra,* was then in its formative stage. Notwithstanding the language of our Supreme Court in that case, and giving the opinion of that court in *Weaver v. Fisher, supra,* the interpretation which we think it should receive, as already indicated, we do not hesitate to hold that the principles laid down by the United States Supreme Court in *Page v. Edmunds, supra,* and other cases, express what has come to be the law with regard to this class of stocks or memberships, and that they must be regarded as property, notwithstanding the limited right of the owner, as to sale and transfer, and that while such limited right of sale and transfer may affect their value, they cannot be considered as altering their existence as property. We therefore hold that Fahy's membership in the Traders' Live Stock Exchange was property and that, as such, it was capable of being reached by his creditors through a creditors' bill. If the creditors, by that means, had been able to reduce it to their possession free of prior liens, it might have been decreed to be sold, subject to the rules of the Exchange, and such amount as might have been realized from the sale could have been applied to the indebtedness from Fahy to the complainant.

But we are further of the opinion, as already stated, that the pledge of the certificate of membership by Fahy to Brown & St. John was a valid legal pledge, and having been consummated prior to the date of the judgment recovered by the complainant against Fahy, it must be held that Brown & St. John have a lien against the membership, prior to that of the complainant, to the extent of the indebtedness of Fahy to Brown & St. John.

It is argued that the lien claimed by Brown & St. John, by reason of the pledge of this membership to them, is not valid, and in support of this contention we are referred to the case of *Union Trust Co. v. Trumbull*, 137 Ill. 146, where it was held that: "There is no mode under our law, except by chattel mortgage duly acknowledged and recorded, by which the owners of personal property retaining its possession can give another a lien upon it that can be enforced as against creditors and subsequent purchasers." The only argument presented by counsel for Brown & St. John, in their brief, to the contrary is to the effect that the fact that stock certificates in corporations and membership certificates in incorporated associations are frequently pledged as security for loans is a matter of such common knowledge that the court will take judicial notice of it. The argument seems to be that because transactions of this kind are so common, they must be valid.

The Traders' Live Stock Exchange is a corporation. In Illinois the legislature passed an act in 1861, providing that the share or interest of a stockholder in any corporation may be taken on execution and sold as therein provided. While the law was in that state, it was held that the provisions of the statute, to the effect that shares of stock in a corporation might be taken on execution, by leaving a copy of an execution with the proper officer of the corporation and that such officer should, upon the exhibiting to him of the execution, be bound to give a certificate of the number of shares held by the judgment debtor, "contemplate that, as against a judgment creditor, title to the stock can only pass by transfer on the books of the company, for if it might be otherwise transferred, as, by indorsement and delivery of the certificates alone, these provisions (of the statute) could have no practical operation." And, further, it was held that in the case of a pledge of shares of stock in a corporation for

the security of a debt not only would the formal delivery of the shares from the pledgor to the pledgee be required, so as to make the pledge good, as against any third party, such as an attaching creditor, but something more would be required in the way of "some such visible or ascertainable index of the change of ownership as will naturally put those interested in the question upon inquiry and thus lead them to correct information upon the subject," namely, a record on the books of the corporation of the transfer from the pledgor to the pledgee. *People's Bank of Bloomington v. Gridley*, 91 Ill. 457 (1879).

But still later the legislature amended the statute by providing that in all cases where the share or interest of a stockholder in any corporation "has been sold or pledged in good faith for a valuable consideration, and the certificate thereof has been delivered, upon such sale or pledge, such share or interest shall not be liable to be taken on execution against the vendor or pledgor, except for the excess of the value thereof over and above the sum for which the same may have been pledged and the certificate thereof delivered." [Cahill's Ill. St. ch. 77, ¶ 53.] This was in 1883. Following that statutory enactment, the question of the respective rights of the pledgee of certain corporate stock delivered as security for an indebtedness by the pledgor, and of a subsequent execution creditor of the pledgor, arose in *Rice v. Gilbert*, 72 Ill. App. 649. In that case the judgment creditor contended that because there had been no written assignment of the certificates of stock and no transfers on the books of the corporations issuing those certificates, there was no such transfer of title of the stocks to the pledgee as prevented the judgment creditor from levying upon and selling them as the property of the pledgor. The court said that such a contention must have prevailed under the law as it existed prior to the amendment of 1883, above referred to, as laid down in *People's Bank of Bloomington v. Gridley, supra,*

but that since that amendment, which "was made for the benefit of pledgees of stock in corporations, we hold, that by its terms a delivery of the certificates of stock in good faith, to one who advances money on the security thereof, is sufficient to protect the holder, as against executions or attachments against the pledgor, to the extent of the debt such stock was delivered to secure, even though there be no transfer in writing or upon the books of the corporation." The latter decision states the law as it is today, which is, that by reason of the provisions of the statute (Cahill's Ill. St. ch. 77, ¶ 53) there may be a valid pledge of stock in a corporation as represented by the certificate issued therefor, or of a membership in an incorporated association, as represented by the membership certificate, to a creditor to secure an indebtedness of the stockholder or the holder of the membership, and such pledge will be good as against a subsequent creditor of the stockholder or member, where the pledge has been made "in good faith for a valuable consideration, and the certificate * * * has been delivered upon such * * * pledge." That situation was present in the case at bar, as shown by the stipulation of facts, and, therefore, the pledge of the certificate of membership in the Stock Exchange to Brown & St. John by Fahy was good as against the subsequent judgment creditor, the complainant.

For the reasons given the decree appealed from is affirmed.

*Decree affirmed.*

TAYLOR, P. J., and O'CONNOR, J., concur.