Common Pleas Court of Hamilton County.

FANNY S. ROWE V. GEORGE A. BRADEN ET AL.

Decided May 17, 1932.

*Rufus B. Hall, Jr.,* and *Herbert Koch,* for plaintiff.

*Robert N. Gorman,* Prosecuting Attorney, *Jack B. Josselson, Leonard H. Freiberg,* Ass't. Prosecuting Attorneys, for defendants, Auditor and Treasurer of Hamilton County, Ohio.

*Thomas C. Lavery,* for defendants The Tax Commission of Ohio.

*Paxton & Seasongood,* and *Waite, Schindel & Bayless,* Amici Curiae.

ALFRED MACK, J.

This cause, which involves the constitutionality of an important part of the new Intangible Tax Law passed by the legislature of Ohio on June 11, 1931, and found in 114 Ohio Laws, pages 714, *et seq.,* has been elaborately argued with great ability and submitted on briefs by the attorneys for the parties hereto, as well as several *Amici Curiae.*

Facts determinative of the case have been agreed to without dispute and are as follows:

On July 19, 1917, Casper H. Rowe, then a citizen of Ohio, executed a deed of trust to Girard Trust Company, of Philadelphia, a corporation under the laws of Pennsylvania, whereby there was transferred to said Trust Company as Trustee stocks and securities. Said trust was an irrevocable act, the grantor reserving no power of revocation. By the terms of said trust instrument the net income of the trust was to be paid to grantor during his lifetime and upon his death (which has occurred) to his wife (Fanny Sarran Rowe, the plaintiff in this action) for her life; on her death the trust was to be continued for a further period of fifteen years, with remainder over to the children of the grantor and his wife and the issue of any deceased child *per stirpes.* The trust corpus consists wholly of stocks, bonds and cash which have continuously been in the custody and control of the trustee at Philadelphia, Pennsylvania, and none of the same have ever since been within the state of Ohio. None of such stocks, bonds

or securities are those of Ohio corporations or persons residing in the state of Ohio. The instrument creating this irrevocable trust provided that in making investments and reinvestments during the life of the grantor, his approval shall first be had to sales of securities and the investment and reinvestment of the proceeds thereof in other securities, and that after his death the wife of grantor and the sons of grantor, if living, shall approve in writing of investments or reinvestments or sales.

In the opinion of the court this provision does not change the irrevocable character of the trust created by the grantor. It is simply a restriction on certain powers of the trustee, the purpose of which seems obvious. Such restriction of investments without approval of those having the beneficial interests avoids any friction between the trustee and the beneficiaries in event of possible loss resulting from change of investments or by reason of reinvestments.

During the year 1931 plaintiff, Fanny Sarran Rowe, as the owner of said equitable interest for life, received from the trustee $97,845.69. During said year the trustee, under the laws of Pennsylvania, paid taxes on such of the trust property in its hands as was not exempt from taxation; the amount of said taxes being $2,641.

Plaintiff as a resident of Cincinnati, Hamilton county, Ohio, filed her individual return of taxable property for 1932 with Robert Heuck, County Auditor, and paid to Edgar Friedlander, County Treasurer, one-half of the taxes which she claimed to be lawfully due from her. In her return she disclosed and listed income yield from said trust, but declined to pay the same, claiming that no taxes could be lawfully levied thereon. Thereupon she filed her petition herein to restrain the defendants from assessing, levying or collecting any taxes upon her life interest in said trust fund or upon the distributions made to her by the trustee, which distributions represented income received by her during the year 1931 from the trustee, less taxes and expenses of administering the trust.

A temporary injunction was granted and this cause has been submitted upon stipulation and additional evidence whereby the facts hereinbefore recited are established

without dispute. The plaintiff asks that said temporary injunction be now made a permanent one.

Before considering the claims and arguments of the parties hereto with respect to the provisions of the new Intangible Tax Law of Ohio as applicable to the case at bar it may not be inopportune to direct attention to the following:

The trust in question was established while the Constitution of Ohio contained its provisions for taxation of personal property by a uniform rule. In November, 1929, Ohio adopted a constitutional amendment, amending Section 2, Article XII, of the Constitution, and repealing Section 3, of said article. By such constitutional amendment, subject to the provisions of the Bill of Rights as contained in Article I of the Constitution of Ohio, there is no limitation on the general power of the Legislature to determine the subjects and methods of taxation, or exemptions therefrom, of personal property.

Hon. Robert A. Taft, the distinguished chairman of the committee which prepared the present tax law of Ohio, and who took a large part in such work, in explaining the Ohio tax problem in the report of the committee to the Governor, expressed the following: In speaking of a tax on intangible property rather than a personal income tax, he said it is desired to have a classified intangible tax, but that in taxing investments, including stocks, bonds, mortgages and other securities yielding income, the tax should be based on returns paid by these securities during the preceding year, rather than supposed value on a day certain. He said that this avoids the question of valuing stocks not listed on the Exchange. He added the following:

"It is essential that we include trust funds which have been established outside of the state, and it would be far easier to tax the income of such funds than an attempt to secure a valuation of the securities contained therein and of the interests and remainders into which these funds are usually divided, calculated on an annuity basis."

In a report of the committee to the General Assembly of Ohio the committee said:

"Furthermore, for practical and constitutional reasons, it is far easier to reach the income from trusts outside of the state by taxing them on an income basis rather than on a principal basis. If the Ohio tax can be escaped by the simple expedient of establishing a trust in New York, any attempt to tax intangibles here will be a farce."

The foregoing observations are deemed essential in a consideration of the instant case. They indicate the purpose of the Legislature in the enactment into law of a bill prepared and submitted by the committee. Such action by the Legislature should be deemed expressive of its intention. The validity of law so enacted is, of course, another matter.

Upon the argument of instant case it was conceded by all that the present intangible tax law of Ohio is a property tax and not an income tax; that as to certain intangibles such property tax is based on value at a definite time; that as to other intangibles the valuation for the purpose of such property tax is measured by income therefrom.

On behalf of plaintiff it is claimed, in brief: (1) Ohio cannot tax an equitable life interest of a resident of Ohio in the corpus of trust funds located in another state, the legal title and possession of which funds are held in such other state by a citizen thereof under an irrevocable trust; (2) that such tax constitutes a taking of private property without due process of law, in violation of Article XIV, Section 1, of the Amendments to the Constitution of the United States; (3) that the taxation of such life interest on the same basis as an interest in entirety is a denial of the equal protection of the laws, in violation of said constitutional provision; (4) that with relation to the tax in question it is unduly discriminatory and the fixing of the value for tax purposes is arbitrarily done.

On behalf of defendants it is argued: (1) that the interest of the plaintiff is a chose in action, which is valuable property of plaintiff in the state of Ohio, separate and distinct from the securities in the hands of the nonresident trustee; (2) that Ohio does not tax the beneficiary of a life estate under a trust in the same way as it taxes an estate in the entirety; (3) that the law of Ohio with

relation to the taxation of plaintiff's interest is not an arbitrary and unreasonable exercise of power, but is founded upon a valid classification; (4) that the interposition of a trustee, having the mere naked legal title, and no beneficial interest in the income derived from administering such trust, should not prevent taxation of the life estate measured by the income received by the present beneficiary of such trust. It is stressed that the trustee is a mere conduit in the transmission of the income to the beneficiary from the corporations paying dividends upon stocks, and the debtors of the bonds and similar securities paying interest thereon.

It is not deemed necessary to consider many of the decisions of the Supreme Court of the United States in cases arising out of taxes levied by different states upon property claimed to be the same, decided by a divided court and containing sometimes opinions concurring in the result for reasons other than stated in the main opinion and likewise containing dissenting opinions. There are but few claimed to bear upon the question involved in the instant case and such will be hereafter referred to. One cannot, however, fail to observe that the subject of taxes levied by different states on what was claimed to be the same property or interest has perplexed the Supreme Court of the United States probably to a degree greater than any other subject before it. Such decisions have recently brought forth many articles and comments by eminent legal writers and students. (See 30 Columbia Law Review, Notes, pages 539 to 547; 30 Michigan Law Review, Notes, pages 630 and 631; 6 University of Cincinnati Law Review, Notes, pages 215 to 232; "The Passing of Situs," 45 Harvard Law Review, pages 777 to 792.)

When all the cases and legal lore are digested, the conclusion must be reached that despite the language used, the result reached has been most largely influenced by an abhorrence of multiple taxation of the same property or interest. In analyzing the decisions and deducing a principle therefrom it is necessary to ascertain whether the same property or same interest was taxed by more than one jurisdiction. It therefore will serve a most useful purpose in the consideration of the instant case to

bear in mind some of the decisions of the Supreme Court of the United States in tax cases determining the character of or interest in the property sought to be taxed.

*Rogers* v. *Hennepin County,* 240 U. S., 194, wherein the opinion was delivered by Mr. Justice Hughes, determined that a membership in a Chamber of Commerce of an incorporated exchange is property of the member distinct from the assets of the corporation, and that taxing a member on his membership and the corporation on its assets does not amount to double taxation. In the subsequent case of *Citizens National Bank* v. *Durr,* 257 U. S., 99, the court repeated that membership in the New York Stock Exchange held by a resident of Ohio is a valuable property right of such Ohio resident. The dissenting opinion written by Mr. Justice Holmes does not deny this but expresses that such right "was localized in New York."

It is unquestioned that the interest of a stockholder in a corporation is different from that of the corporation and that the holder of such stock can be taxed, although the corporation also is taxed upon all the property, the interest of the stockholder wherein is represented by such stock certificate. Likewise it is undisputed that a mortgage upon real estate is property which may be taxed in the hands of the holder thereof, although the real estate is also taxed.

These authorities should suffice to justify an inquiry into whether the plaintiff in the instant case has in Ohio any property right or valuable interest which is different from the property upon which taxes have been paid in Pennsylvania by the trustee herein.

From the time of *McCullough* v. *Maryland,* 4 Wheaton, 316, it has been undenied that the powers of taxation of a state are uncontrolled except as restrained by the provisions of the Federal Constitution. Likewise it is undisputed that such powers can only be exercised over persons, property or business within the jurisdiction of the state. State Tax of Foreign Held Bonds, 15 Wallace, 300; *Dewey* v. *DesMoines,* 173 U. S., 193; *Louisville & Jeffersonville Ferry Co.* v. *Kentucky,* 188 U. S., 385.

Bearing in mind the foregoing, let us turn to the New Intangible Tax Law of Ohio:

By Section 5323, General Code, the term "investments" as used in the title (Taxation) includes "all equitable interests, life or other limited estates and annuity interests in any investment hereinbefore described, or in any fund made up of any such investments, wherever located."

By Section 5388, General Code, it is provided that in listing investments the amount of the income yield of each for the calendar year next preceding the date of listing shall, except as otherwise provided, be stated in dollars and cents and the assessment thereof shall be the amount of the income yield.

By Section 5389, General Code, it is provided that the term "income yield" means the aggregate amount paid as income to the owner or holder of an investment, whether including the taxpayer or not during such year. By the same section in case of annuities for life or lives it is arbitrarily considered that interest is paid at the rate of 4 per cent. and, since the principal is ultimately exhausted, that the average value of the annuity will be one-half the initial value. An arbitrary rate of 4 per cent. is applied to this one-half as the basis for determining a uniform income yield during the entire period while the principal is being exhausted.

By the same section it is expressly provided that income yield in case of equitable interests shall be "the cash distributions of income so made."

By Section 5638, General Code, the classification of intangible property and rate of taxation therefor is stated. The rate on investments producing income is fixed at "five percentum of income yield."

Plaintiff being a resident of Ohio and her estate or interest being with relation to intangible property, the arguments in the instant case have rested largely on whether the principle of *"mobilia sequuunter personam"* applies and fixes a situs for taxation of plaintiff's equitable life interest. On behalf of defendants the application of said principle is invoked; on the other hand, plaintiff denies its applicability. Whatever conclusion may be reached it seems that the following conclusion of Mr. Justice Stone in his dissenting opinion in *First National Bank* v. *Maine*, 284 U. S., 334, is apposite:

"Situs of an intangible, for taxing purposes, as the decisions of this court, including the present one, abundantly demonstrate, is not a dominating reality, but a convenient fiction which may be judicially employed or discarded, according to the result desired."

In support of plaintiff's contention *Brooke* v. *City of Norfolk, et al.*, 277 U. S., 27, and *Safe Deposit & Trust Co.* v. *Virginia*, 280 U. S., 83, are relied on and are claimed to be a departure from the principle announced in the earlier case of *Maguire* v. *Tefry*, 253 U. S., 12, which defendants claim should control a decision in the instant case. Plaintiff also insists that *First National Bank* v. *Maine*, 284 U. S., 312, the latest pronouncement of the Supreme Court, indicates plainly that that court "has now put a stop to indiscriminate taxation of the same property by various states," and that such decision characterizes as irrational the view that uses a legal fiction holding that the same securities are within two states at the same instant. It is insisted by plaintiff that "the law does not levy a tax against Mrs. Rowe but a tax against an interest in a fund which is in Pennsylvania."

Let us examine the mentioned decisions for the purpose of ascertaining exactly what was determined in the respective cases irrespective of the language employed in arriving at such conclusion.

In *Maguire* v. *Tefry*, Maguire, a resident of Massachusetts, was taxed upon income from a trust created under the will of a decedent in Pennsylvania and administered by a Pennsylvania Trust Company. The securities were in the possession of a trustee in Pennsylvania and the trust was administered under the laws of that state. The Supreme Judicial Court of Massachusetts held that the income received by Maguire upon bonds of certain corporations and certain railway equipment trust certificates was taxable in Massachusetts under a statute of that state. This statute provided for a tax upon *incomes* and the court at page 16 approves the conclusion which held the tax valid:

"The income tax is measured by reference to the riches of the person taxed actually made available to him for valuable use during a given period. It establishes a basis of taxation directly proportioned to ability to bear the

burden. It is founded upon the protection afforded to the recipient of the income by the government of the commonwealth of his residence, in his person, in his right to receive the income and in his enjoyment of the income when in his possession. That government provides for him all the advantages of living in safety and in freedom and of being protected by law. It gives security to life, liberty and the other privileges of dwelling in a civilized community. It exacts in return a contribution to the support of that government measured by and based upon the income in the fruition of which it defends him from unjust interference. * * * The assessment does not attach the fund or control it; nor does it interfere with the trustee in the discharge of his proper duties; nor call him, nor hold him, to any accountability. It affects only the income after it has been paid by the trustee to the beneficiary."

Plainly that decision does not govern the instant case, because it relates solely to an income tax law, in which the court is not concerned with the situs of the property from which such income was derived.

*Brooks* v. *City of Norfolk et al.,* 277 U. S., 27, was heard upon *certiorari* to a judgment of the Supreme Court of Appeals of Virginia. No opinion was announced in the state court. The only reported reference to the case in the state court is contained in 148 Virginia Reports, containing a list of cases in which a writ of error was refused by the Supreme Court of Appeals of Virginia and wherein it is said that on February 2, 1927, such writ of error was refused to Corporation Court of City of Norfolk.

In that case a citizen and resident of Maryland by will bequeathed to a trust company in Baltimore $80,000 in trust to pay the income to Mrs. Brooks for life, then to her daughters for their lives and upon the death of the last survivor to divide the principal between descendants then living of the daughters *per stirpes.* The will was proved in Maryland and the property held in trust remained in Maryland and no part of it ever was in Virginia. The will was admitted to probate in the Corporation Court of Norfolk, Virginia, as a foreign will. Mrs. Brooks paid without question a tax upon the income received by her but an assessment was levied against her on

the corpus of the property controlled by the trustee at Baltimore. It was held that Mrs. Brooks not be taxed on such corpus of the fund so controlled by the trustee in another state where the trust was created in addition to a tax upon her income. The conclusion must be drawn that this case only determines that the *corpus* of a trust fund physically and irrevocably in the control of a trustee in another state cannot be taxed in another state against the beneficiary of a life estate domiciled in such latter state.

In *Safe Deposit & Trust Co.* v. *Virginia,* Kellam, a citizen and resident of Virginia, transferred and delivered to the Trust Company of Baltimore, Maryland, certain stocks and bonds in trust to accumulate the income for the benefit of his two sons and to distribute the corpus and accumulations to them upon their respectively reaching the age of twenty-five years. When the trust was created in 1920 the two sons were of the respective ages of five and eight years. By the terms of the trust if either son died before reaching the age of twenty-five, his share was to pass to his children, and if none survived, then to the surviving brother. Kellam reserved to himself a power of revocation, but died in 1920 without exercising it. No disposition was made of the corpus of the property in event of the death of both sons under the age of twenty-five years without issue. The sons were residents and citizens of Virginia. The corpus of the trust property was held by the trustee in Maryland and taxes chargeable on such property under the laws of Maryland were paid in that state. Virginia assessed the entire corpus of the property for taxation for the years 1921-1925. Such taxation was upheld by the Supreme Court of Appeals of Virginia in an opinion reported in 151 Virginia, 883, and a re-hearing denied (see pages 901 to 912). That court reached the conclusion that since the beneficial owners of the fund were domiciled in Virginia, the assessment did not violate the Fourteenth Amendment of the Federal Constitution. The Supreme Court of the United States reversed such decision on the ground that inasmuch as Virginia taxed the corpus of property wholly beyond her jurisdiction or control, the law whereon such taxation was

based conflicted with the Fourteenth Amendment. In the opinion of the majority of the court, at page 91, Mr. Justice McReynolds said:

"Manifestly, the securities are subject to taxation in Maryland where they are in the actual possession of the Trust Company—the holder of the legal title. That they are property within Maryland is not questioned. * * * Also, nobody within Virginia has a present right to their control or possession or to receive income therefrom, or to cause them to be physically brought within her borders."

At page 94, speaking of the rule of *mobilia sequunter personam*, the conclusion of the court is stated in this language:

"It would be unfortunate, perhaps amazing, if a legal fiction originally invented to prevent personalty from escaping just taxation, should compel us to accept the irrational view that the same securities are within two states at the same instant and because of this to compel a double and oppressive assessment."

*First National Bank* v. *Maine* was a case relating to a succession tax. Haskell, a resident of Massachusetts, died leaving a will which was probated in Massachusetts. The greater part of his estate consisted of stock in a Maine corporation having most of its property in that state. Succession or inheritance taxes were paid in Massachusetts on legacies or distributive shares made up in greater part of the proceeds of the stock of the Maine corporation. Ancillary administration was taken out in Maine and an inheritance tax greater than that paid in Massachusetts was assessed under the Maine statutes on the property passing by the will. The Supreme Judicial Court of Maine held such tax valid on the ground that the shares of stock were within its jurisdiction even though the owner was a non-resident decedent, and regardless of whether the certificates of stock at the time of his death were in the state of the domicile of the owner or in the taxing state, and concluded that such tax did not infringe the provisions of the Fourteenth Amendment (see 130 Me., 123). In reversing this judgment the majority opinion of the Supreme Court held that the state of the domi-

cile of the owner of such stock, which is other than that in which the corporation issuing such stock and having its property, alone has power to tax the succession to such stock by will or inheritance, and that the state of such corporation cannot levy an inheritance or succession tax upon such shares of stock. The decision of the majority of the court is founded upon the broad principle that a succession or inheritance tax upon intangibles should be levied only in the state of the domicile of the owner of such intangibles.

The question of taxes assessed on such intangibles in a state other than that of the owner, in event such intangibles had a business situs in such state other than that of the domicile of the owner was obviously not involved.

From the foregoing analyses of said decisions this court reaches the conclusion that there is no decision of the Supreme Court of the United States, controlling the exact question involved in the instant case. Were there any such decisive opinion, the same not only would be binding upon this court but would be eagerly followed without right or thought of questioning the correctness thereof.

In the absence of such, the question remaining to be answered is whether the resident plaintiff herein has, in Ohio, any property or interest of value, upon which the laws of Ohio seek to levy a tax under the legislation above referred to, differing in nature from the corpus in the hands of the nonresident trustee. It seems to the court that the corpus of the property, the securities in question, is a res, property of value, within the state where the owner of the legal title thereof holds and controls the same; that the right to the usufruct or benefit of such res is a chose in action, a *jus incorporale,* a right of or to the income of the property as distinguished from the property itself.

Eminent teachers, recognized as masters in scientific analysis of legal principles, agree that from the very origin of a trust the equitable interest of *cestui que trust* is a personal right, a chose in action enforceable against the trustee. Professor James Barr Ames, in an article in 1 Harvard Law Review, 1, entitled "Purchase for Value Without Notice" says at page 9:

"A *cestui que trust* is frequently spoken of as an equitable owner. This, though a convenient form of expression, is clearly inaccurate. * * * What the *cestui que trust* really owns is the obligation of the trustee, for an obligation is as truly the subject matter of property as any physical res."

Professor C. C. Langdell in his article "A Brief Survey of Equity Jurisdiction," in the same volume, says at page 59:

"A true equitable right exists when a legal right is held by its owner for the benefit of another person, either wholly or in part. Such right may be defined as an equitable personal obligation."

In an article by Walter G. Hart in 28 Law Quarterly Review, he says at page 291:

"Professor Holland, however, whom we regard as the leading modern exponent of Austin's School, is quite clear and explicit. His view is that the right created by a trust is a species of primary or antecedent rights in *personam*."

At page 297 he reaches the conclusion:

"It is therefore submitted that in classifying the law or framing an ideal code trust ought to be placed, not under the law of property, but, as Professor Holland places it, under the law of obligations, and in the same subdivision as rights *quasi ex contractu*."

Mr. Justice Stone, before becoming a member of the Supreme Court of the United States, in an article in 17 Columbia Law Review, 467, entitled "The Nature of the Rights of the *Cestui Que Trust*," concludes at page 500:

"The nature of the right of the *cestui que trust* most consistent with the decisions and which gives greatest promise of the development of the law upon a moral basis is that the right of the *cestui* is a right in *personam* against the trustee, specifically enforceable with reference to the trust res." (See also Cardozo, J., in *Whiting* v. *Hudson Trust Co.*, 234 N. Y., 407.)

Pennsylvania has in the instant case taxed in the hands of the trustee, the owner of the legal title, the corpus of the securities in physical possession thereof in that Commonwealth and constituting part of its economic wealth, and consequently called upon to contribute to the expense

of conducting such government which affords such legal holder its protection.

Plaintiff, a resident of Ohio, and enjoying protection of its government, is the owner of a valuable chose in action against such nonresident trustee; the valuable right to receive from such trustee, each year that she lives, the net income from such trust corpus. It seems impossible to conceive that this is not wealth or property in the state of Ohio, entirely differing in nature or character from the corpus in the control of the nonresident trustee. It is an equitable life interest under a trust, which Section 5323, General Code, includes for the purpose of taxation under the broad nomenclature "Investments." There is no attempt to tax the corpus in the possession of the nonresident trustee, the value of which in Pennsylvania may be many times the amount of the income therefrom. Ohio attempts only to tax the estate of its resident measured by what she receives from the administration of the trust relating to such corpus in Pennsylvania. In the opinion of the court it is analogous to a case where a Pennsylvania corporation, having all its property in that state, has issued certificates of stock to a citizen and resident of Ohio, who receives in Ohio, dividends or income on such stock. No one can deny both the power of Pennsylvania in such circumstances to tax the corporation, and of Ohio to tax the stock possessed by its resident.

Reaching the conclusion that plaintiff's right is a distinct kind of property in Ohio, differing from the corpus in control of the Pennsylvania trustee, it follows that there should be no denial of the right of Ohio to tax plaintiff's rights. Viewed in this light there should be no appeal to the abhorrence of multiple taxation of the same thing, nor to invoke the protection of the Fourteenth Amendment of the Federal Constitution under its equal protection and due process clauses.

But this conclusion does not dispose of the argument that the tax law in question is discriminatory and makes an unreasonable and arbitrary classification. Let us consider this. Without possibility of dispute, the principle is universally established that where constitutional provisions admit of classifications of both subject and method

of taxation, the legislative classifications and methods, unless manifestly arbitrarily and unreasonably made, will be recognized. The justice or reasonableness of applying a rate to one class of property for taxation purposes, higher or lower than the rate for another class, is not a matter for judicial determination, but for appeal to and correction by the lawmaking body; and yet the legislature cannot by mere name or title make various classifications of exactly the same subject matter in order to fix different rates for such named classifications. Such classifications without any reason whatever will be held arbitrary, unreasonable and discriminatory and will be prohibited under the equal protection and due process clauses of said Fourteenth Amendment.

In *Ohio Oil Co.* v. *Conway*, 281 U. S., 146, at 159, Mr. Chief Justice Hughes, speaking for the entire court, said:

"The states have a wide discretion in the imposition of taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the national government or violating the guaranties of the Federal Constitution, the states have the attribute of sovereign powers in devising their fiscal systems to insure revenue and foster their local interests. The states, in the exercising of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the 14th Amendment, but that Amendment imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation. The state may tax real and personal property in a different manner. It may grant exemptions. The state is not limited to *ad valorem* taxation. It may impose different specific taxes upon different trades and professions and may vary the rates of excise upon various products. In levying such taxes, the state is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. To hold otherwise would be to subject the essential taxing power of the state to an intolerable supervision, hostile to the basic principles of our government and wholly beyond the protection which the general clause of the 14th Amendment was intended to assure."

At page 160 he said:

"With all this freedom of action there is a point be-

yond which the state can not go without violating the equal protection clause. The state may classify broadly the subjects of taxation, but in doing so it must proceed upon a rational basis. The state is not at liberty to resort to a classification that is palpably arbitrary. The rule is generally stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' "

In the very recent case of *State Board of Tax Commissioners* v. *Jackson,* 283 U. S., 527, Mr. Justice Roberts said at page 537:

"The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety of differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. * * *

"It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the court make this abundantly clear."

Under the power of the legislature to classify the subjects and methods of taxation, the courts cannot hold a tax law invalid, even if the method adopted does not determine the real value. *New York* v. *Latrobe,* 279 U. S. 421; *International Shoe Co.* v. *Shartel,* 279 U. S. 429.

As to the argument that plaintiff's life estate is valued as if it were the entirety, the Court is unable to agree with this contention. Plaintiff is not taxed as if her interest were an entirety, but is only taxed upon a valuation measured by what plaintiff actually received during the past year. To say that her life estate may end by death at any moment does not alter the case, be-

cause the tax is levied against her only while she enjoys her life estate, and then only upon a valuation measured by her actual income therefrom. It should not be overlooked that a taxpayer directly receiving income from investments, not held in trust, pays a larger tax, because his 5% rate is applied not upon net income actually received, but upon the entire gross income during the entire year, notwithstanding such taxpayer purchased the investment after a part, or all of the income, was paid during such year to a preceding owner thereof.

In support of the claim of unreasonable, arbitrary and discriminatory classification, attention is directed to the different tax imposed on an annuity, which it is claimed is also a life estate. But the argument overlooks the essentially different nature of an annuity. Such right, property or chose in action arises purely out of a contractual relation, whereby for a given sum a given income is assured the annuitant, without right, title or interest in that sum or the corpus of the property representing the investment of such sum.

As pointed out by Hon. Robert A. Taft in his comment on Section 5389, General Code, there is a reason for taxing annuities in a different manner than investments held by the ower, or life estates under a trust, of such investments. This he states thus:

"A difficulty arises in the case of annuities and similar investments in which the principal is gradually exhausted and income cannot be clearly distinguished from principal payments. The federal government considers all such payments principal until the original cost is reimbursed. Under this Act it is arbitrarily considered that interest is being paid at the rate of four per cent and, since the principal is ultimately exhausted, that the average value of the annuity will be one-half the initial value; and the arbitrary rate of four per cent is applied to this one-half as the basis for determining a uniform income yield during the entire period while the principal is being exhausted."

For the foregoing reasons the Court is unable to agree that the argument is sound which claims either that the classification or method of assessing the life interest of plaintiff under the trust administered by The Girard Trust

Company is unreasonable, arbitrary or discriminatory. Upon the contrary, the Court is of opinion that such classification and method of assessment are founded upon good reasons and proper policies suggested to the legislature and adopted by it when enacting into law the bill reported by the Joint Committee on Taxation.

It follows that the permanent injunction sought herein will be denied, the preliminary injunction granted herein will be dissolved, and the petition will be dismissed at the costs of plaintiff.