CITIZENS NATIONAL BANK OF CINCINNATI, ADMINISTRATOR OF ANDERSON, *v.* DURR, AS FORMER AUDITOR, ET AL.

ERROR AND CERTIORARI TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 27. Argued October 7, 1921.—Decided November 7, 1921.

1. Where objection to a tax imposed under general state statutes was limited to a claim of constitutional immunity for the particular subject taxed, without drawing in question the validity of the statutes as construed or of the authority exercised under the State in imposing the tax, a judgment sustaining the tax is reviewable by certiorari but not by writ of error, under Jud. Code, § 237, as amended.    P. 106.
2. A constitutional ground advanced for the first time in a petition for rehearing, presented to a state Supreme Court and denied without reasons given, comes too late to raise a question for review by this court.    P. 106.
3. A membership in the New York Stock Exchange, although partaking of the nature of a personal privilege and assignable only with qualifications, is a valuable property right subject to property taxation.    P. 108.
4. Whether such a membership, when held by a resident of Ohio, is subjected to taxation by the Ohio taxing laws, is a question of state law determinable by the Supreme Court of that State.    P. 108.

6267°—22——12

5. Since a membership carries peculiar and valuable privileges, not confined to the real estate of the Exchange in New York, which enable a nonresident member to conduct a lucrative business in the State of his residence through other members in New York, his membership is taxable as intangible personal property at his domicile. P. 108. *Louisville & Jeffersonville Ferry Co.* v. *Kentucky,* 188 U. S. 385, distinguished.

6. Taxation by two States upon identical or closely related property interests falling within the jurisdiction of both is not forbidden by the Fourteenth Amendment. P. 109.

7. A discrimination, in imposing a tax in Ohio on a membership in the New York Stock Exchange while exempting memberships in a local stock exchange, which may have been due to mere accident or negligence of subordinate officials, or have been based upon some fair reason, the presumption of which was not rebutted, *held* not to render the tax invalid under the Equal Protection Clause. P. 109.

8. The fact that non-resident members of the New York Stock Exchange may deal in its securities through other members for less commissions than are charged non-members, affords a reasonable ground for taxing the privilege in the one case and not in the other. P. 110.

9. A tax on a membership in the New York Stock Exchange employed by an Ohio broker in executing orders for his Ohio clients through the exchange in New York, *held* not an unconstitutional burden on interstate commerce. P. 110.

100 Oh. St. 251, affirmed.

REVIEW of a judgment of the Supreme Court of Ohio sustaining a tax in a suit brought by Anderson to enjoin its enforcement.

*Mr. Murray Seasongood* for plaintiff in error and petitioner.

A voluntary association like this has no technical name or place in the law. Each member does his own business and is not interested in the business done by any other member. The Exchange, as such, does no business; there are no profits or losses to be divided. Although the Exchange owns property, the ownership is a mere incident

and not the main object of the association.  The member has no severable property interest in it, nor a right to any proportionate part on withdrawing.  Substantially, the whole property of the association is the Exchange real estate, consisting of its land and the building in New York City.  The title to this land and building is in a New York corporation, of which the entire capital stock is beneficially owned by the Exchange.  This method of holding the real estate is adopted in order to avoid difficulty of conveying the land.

A seat or membership is a species of incorporeal property, a personal, individual right to exercise a certain calling in a certain place, but without the attributes of descendibility or assignability characteristic of other species of property.  It cannot be attached or seized on execution, being, in substance, a mere license to buy and sell.

A privilege inseparably connected with real estate should be regarded, in taxation statutes, as in the nature of real estate.  § 5322, Ohio Code.

The membership is exactly analogous to the ferry franchise considered in *Louisville & Jeffersonville Ferry Co.* v. *Kentucky*, 188 U. S. 385.  See *Currier* v. *Studley*, 159 Mass. 17, 24.

Whether a personal right to go on certain real estate at certain hours only and transact there, either in person or by others having the same right, business in a limited class of securities, subject to rules prescribed by the governing body of the owners of the real estate, is technically an easement, a franchise, a private right of way or way in gross, the substantial rights, by whatever name called, are inseparably connected with real estate, just as much as was the ferry right in the *Jeffersonville Ferry Case.*  Crops growing in the ground are personal property and leases for years are things personal or chattels real, yet they certainly relate to real estate.  So of an estate *pur autre vie.*

Fixtures, title deeds, family portraits, money, slaves and other heirlooms are personal property, but were treated sometimes as realty. 2 Bouvier, 14th ed., 414. The method of conveyance does not determine the essence of the thing. . Immovables and movables were the divisions in the civil law of what we call real and personal property. *Ibid.*

*Rogers* v. *Hennepin County,* 240 U. S. 184, and *Goetzman* v. *Minnesota Tax Commission,* 136 Minn. 260, are conclusive that what gives a membership value is the right, exercisable where the Exchange is located and that that, therefore, fixes the situs for taxation. See *Thompson* v. *Adams,* 93 Pa. St. 55; *Pancoast* v. *Gowen,* 93 Pa. St. 66; *Page* v. *Edmunds,* 187 U. S. 596; *Barclay* v. *Smith,* 107 Ill. 349; *Lowenberg* v. *Greenebaum,* 99 Cal. 162; *London & Canada Loan, etc.* v. *Morphy,* 10 Ont. Rep. 86; *Ketcham* v. *Provost,* 141 N. Y. S. 437; *Weston* v. *Ives,* 97 N. Y. 222; *Lemmon* v. *Feitner,* 167 N. Y. 1; *Baltimore* v. *Johnson,* 96 Md. 767; *San Francisco* v. *Anderson,* 103 Cal. 69; *Caldicott* v. *Griffiths,* 8 Exch. 898; *Belton* v. *Hatch,* 109 N. Y. 593; *White* v. *Brownell,* 4 Abb. Pr., N. S., 162; s. c. 3 Abb. Pr., N. S., 324; *In re Hurlbutt Hatch & Co.,* 135 Fed. 504; *In re Stringer,* 253 Fed. 352.

These cases recognize that a membership in the Exchange is unquestionably property, but they also recognize that it is unique and cannot be realized on in the way that ordinary real or personal property is subjected to seizure,—all rights must be worked out through the New York Stock Exchange and subject to its constitution and conditions. These cases all tend to show that the situs of the property is where the Exchange is located and not elsewhere. Cf. *Standard Gas Power Co. of Georgia* v. *Standard Gas Power Co. of Delaware,* 224 Fed. 990; *Murphy* v. *Ford Motor Co.,* 241 Fed. 134.

While this privilege is not granted by the State of New York, as is the franchise of a New York corporation, the

right conferred by the Committee on Admissions is to do business in New York, just as much as if the right had been conferred by the State of New York. It is immaterial whether the member does this business in person, or through others on a basis more favorable than such others would do the business for non-members. The business, in either case, is transacted on the floor of the Exchange in New York City. If no business is done, no income is earned. Nor has plaintiff in error any muniment of title in Ohio, or elsewhere.

In the case of stocks, the owner has power at his domicile to effect a sale or pledge, to will them specifically, to receive, at his domicile, earnings of the corporation, and he has a proportionate share of the corporate assets. He has a stock certificate, which is a negotiable document of title, personal property, in many States, subject to seizure by execution.

In the case of bonds, the owner has a right to a definite income, at his domicile, without the necessity of effort on his part to produce such income. Even if the bond is not kept in the State of his domicile, it is readily removable thereto, at any time; whereupon a complete enjoyment of it there will be in the owner. In the case of money or bank accounts, the same is true. The owner is in complete control and can transfer the account from one State to another by signing his name to a check.

But, in the case at bar, plaintiff, to acquire his membership, paid $60,000 in 1911. As there are 1,100 members and less than $6,000,000 of assets, it is obvious the plaintiff did not pay $60,000 to get an interest in these assets, since his proportionate share would be less than $5,500 and since the Exchange has not made and does not make any distribution of assets to members.

It is contended by us that a privilege inseparably connected with real property is in the nature of real property for taxation purposes. If this membership is to be classed

as intangible personal property, it is not such as may be
taxed at the State of domicile, as other intangible prop-
erty may be, because this intangible right has a perma-
nent situs in New York. *Cream of Wheat Co.* v. *Grand
Forks*, 253 U. S. 325.

The plaintiff is taxed because of a mere incident, on the
whole value of his membership, the substantial value of
which, as the court concedes, is doing business in another
State, which may not be taxed. This is a mere " quibble "
(*Selliger* v. *Kentucky*, 213 U. S. 200, 206), analogous to
taxing a corporation doing both intrastate and interstate
business on its intrastate business, so that taxation of the
interstate business done will also be included. The deci-
sions of this court have forbidden that. *International
Paper Co.* v. *Massachusetts*, 246 U. S. 135; *Delaware,
Lackawanna & Western R. R. Co.* v. *Pennsylvania*, 198
U. S. 341.

The court below was in error in assuming that the " in-
cident " of division of commissions is business done in
Ohio. A member in Ohio divides the fixed commission
earned for transacting business in New York with the
member in New York transacting the business. A non-
member in Ohio may not divide the commission earned
by his correspondent in transacting the business, but he
can have the business transacted, nevertheless, and earn
a commission. In neither case does the Ohio broker ex-
ecute transactions in Ohio. That is impossible. Both
send on orders, to be executed by a member of the Ex-
change in New York. The orders cannot be executed
except on the floor of the Exchange.

An Ohio citizen may own real estate in New York and
enjoy increased credit from general knowledge of his own-
ership of it. He may derive rents in Ohio from such real
estate, but, if such rents were taxable, surely that would
not permit taxation by Ohio of the real estate. Whatever
fraction of commission the member earns from orders

forwarded to New York is taxed as money or credits in Ohio. The fact that he earns such fractions does not justify taxing his membership in the New York Exchange, any more than it would justify taxing real estate he might own in New York or justify taxing a non-member broker on the membership in the New York Exchange of the broker who executes his orders.

Plaintiff, subjected to unreasonable, discriminatory and multiple taxation, is deprived of the equal protection of the laws.

The tax sought to be levied is a direct burden on interstate commerce. Plaintiff transacted no business in Ohio by virtue of his membership in the Exchange. Securities listed on that Exchange must be bought and sold there and not elsewhere, under penalty of expulsion for non-compliance with the rule requiring this. The Ohio tax is said to be a property tax. Applied, however, to the privilege here in question, it is a tax levied on the privilege, and the privilege, if any business is done in Ohio, is to do only interstate commerce. *Union Tank Line Co.* v. *Wright,* 249 U. S. 275.

The decision of the court below denied plaintiff due process of law and the equal protection of the laws. It amounted to so gross a mistake as not to be possible, if well recognized rules of decision and precedents had been followed. *Chicago Life Insurance Co.* v. *Cherry,* 244 U. S. 25, 30. Again, the settled course of construction of the Ohio taxing statutes had become a rule of property conferring, for the years preceding, immunity from taxation on this privilege, within the spirit of *Gelpcke* v. *Dubuque,* 1 Wall. 175; *Louisiana* v. *Pilsbury,* 105 U. S. 278; *Muhlker* v. *New York & Harlem R. R. Co.,* 197 U. S. 544; *Milwaukee Electric Ry. Co.* v. *Milwaukee,* 252 U. S. 100; *Chisholm* v. *Shields,* 67 Oh. St. 374.

*Mr. Charles S. Bell,* with whom *Mr. Louis H. Capelle* was on the brief, for defendants in error and respondents.

MR. JUSTICE PITNEY delivered the opinion of the court.

A suit for injunction brought in a state court by Anderson against Durr, then Auditor, and Cooper, then Treasurer, of Hamilton County, Ohio, raised the question whether a certain property tax imposed under authority of the State of Ohio upon plaintiff, a resident of that State, by reason of his owning a membership—figuratively termed a " seat "—in the New York Stock Exchange, infringed his rights under the commerce clause of the Constitution of the United States or the " due process of law " or " equal protection " provisions of the Fourteenth Amendment. His assault upon the tax was sustained by the court of first instance (20 Ohio N. P., N. S., 538), but overruled by the Court of Appeals (29 O. C. A. 465), and finally by the Supreme Court of the State (100 Ohio St. 251). Until the decision of the latter court the federal right had been asserted merely as a claim of immunity from the tax under the constitutional provisions referred to, without drawing in question the validity of any statute of, or authority exercised under the State on the ground of their being repugnant to those provisions. After the final decision, in an application to the Supreme Court for a rehearing, plaintiff for the first time asserted that the decision, if adhered to, rendered the Ohio taxation statutes invalid because of such repugnance. This application was denied without reasons given, and hence must be regarded as having come too late to raise any question for review by this court. *Loeber* v. *Schroeder,* 149 U. S. 580, 585; *Fullerton* v. *Texas,* 196 U. S. 192, 193; *Corkran Oil Co.* v. *Arnaudet,* 199 U. S. 182, 193. Therefore a writ of error, allowed by the chief justice of the Supreme Court, must be dismissed because not the proper mode of review under § 237 Judicial Code, as amended by Act of September 6, 1916, c. 448, 39 Stat. 726. But an application for the allowance of a writ of certiorari, made to this court under

the same section, consideration of which was postponed until the hearing on the writ of error, will be granted, and the case determined thereunder.

The essential facts are as follows: Plaintiff holds a membership or seat in the New York Stock Exchange for which he paid $60,000, and which carries valuable privileges and has a market value for the purposes of sale. The Exchange is not a corporation or stock company, but a voluntary association consisting of 1100 members, governed by its own constitution, by-laws and rules, and holding the beneficial ownership of the entire capital stock of a New York corporation which owns the building in which the business of the Exchange is transacted, with the land upon which it stands, situated in the City of New York and having a value in excess of $5,000,000. A member has the privilege of transacting a brokerage business in securities listed upon the Exchange, but may personally buy or sell only in the Exchange building. Membership is evidenced merely by a letter from the secretary of the Exchange notifying the recipient that he has been elected to membership. Admissions to membership are made on the vote of the Committee on Admissions. Membership may be transferred only upon approval of the transfer by the committee, and the proceeds are applied first to pay charges and claims against the retiring member arising under the rules of the Exchange, any surplus being paid to him. On the death of a member, his membership is subject to be disposed of by the committee; but his widow and descendants are entitled to certain payments out of a fund known as the " Gratuity Fund." In the business of brokers in stocks and bonds a differentiation is made between members of the Exchange and non-members, in that business is transacted by members on account of other members at a commission materially less than that charged to non-members. A firm having as a general partner a member of the Exchange is entitled to

have its business transacted at the rates prescribed for members.

That a membership held by a resident of the State of Ohio in the Exchange is a valuable property right, intangible in its nature but of so substantial a character as to be a proper subject of property taxation, is too plain for discussion. That such a membership, although partaking of the nature of a personal privilege and assignable only with qualifications, is property within the meaning of the bankrupt laws, has repeatedly been held by this court. *Hyde* v. *Woods,* 94 U. S. 523, 524–525; *Sparhawk* v. *Yerkes,* 142 U. S. 1, 12; *Page* v. *Edmunds,* 187 U. S. 596, 601. Whether it is subjected to taxation by the taxing laws of Ohio, is a question of state law, answered in the affirmative by the court of last resort of that State, by whose decision upon this point we are controlled. *Clement National Bank* v. *Vermont,* 231 U. S. 120, 134.

The chief contention here is based upon the due process of law provision of the Fourteenth Amendment: it being insisted that the privilege of membership in the Exchange is so inseparably connected with specific real estate in New York that its taxable situs must be regarded as not within the jurisdiction of the State of Ohio. *Louisville & Jeffersonville Ferry Co.* v. *Kentucky,* 188 U. S. 385, is cited. It is very clear, however, as the Supreme Court held, that the valuable privilege of such membership is not confined to the real estate of the Stock Exchange; that a member has a contractual right to have the association conducted in accordance with its rules and regulations, and, incidentally, has the right to deal through other members on certain fixed percentages and methods of division of commissions; that this right to secure the services of other members and to "split commissions" is a valuable right by which plaintiff in Cincinnati may properly hold himself out as a member entitled to the privileges of the Exchange, denied to non-members; and

that thus he is enabled to conduct from and in his Cincinnati office a lucrative business through other members in New York. The court held, and was warranted in holding, that the membership is personal property, and being without fixed situs has a taxable situs at the domicile of the owner. *Mobilia sequuntur personam.* See *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 205. The asserted analogy to *Louisville & Jeffersonville Ferry Co.* v. *Kentucky, supra,* cannot be accepted. That decision related to a public franchise arising out of legislative grant, held to be an incorporeal hereditament in the nature of real property and to have no taxable situs outside the granting State. It did not involve the taxation of intangible personal property. See *Hawley* v. *Malden,* 232 U. S. 1, 11; *Cream of Wheat Co.* v. *Grand Forks,* 253 U. S. 325, 328.

Nor is plaintiff's case stronger if we assume that the membership privileges exercisable locally in New York enable that State to tax them even as against a resident of Ohio. (See *Rogers* v. *Hennepin County,* 240 U. S. 184, 191.) Exemption from double taxation by one and the same State is not guaranteed by the Fourteenth Amendment (*St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 367–368); much less is taxation by two States upon identical or closely related property interests falling within the jurisdiction of both, forbidden. *Kidd* v. *Alabama,* 188 U. S. 730, 732; *Hawley* v. *Malden,* 232 U. S. 1, 13; *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 58.

That plaintiff is denied the equal protection of the laws, within the meaning of the Fourteenth Amendment, cannot be successfully maintained upon the record before us. The argument is that other brokers in the same city are not taxed upon the value of their memberships in the local stock exchange, nor upon the privilege of doing business in New York Stock Exchange securities. As to the

110 OCTOBER TERM, 1921.

Holmes, Van Devanter and McReynolds, JJ., doubting.   257 U. S.

local exchange memberships, it may be that the failure to tax them is but accidental or due to some negligence of subordinate officers, and is not properly to be regarded as the act of the State.   If it be state action, there is a presumption that some fair reason exists to support the exemption, not applicable to a membership in the New York Exchange, and plaintiff has shown nothing to overcome the presumption.   As to the privilege referred to, it already has been shown that the rights incident to plaintiff's property interest give him pecuniary advantages over others in the same business.   Manifestly this furnishes a reasonable ground for taxing him upon the property right, although others enjoying lesser privileges because of not having it may remain untaxed.

The contention that the tax constitutes a direct burden upon interstate commerce is groundless.   Ordinary property taxation imposed upon property employed in interstate commerce does not amount to an unconstitutional burden upon the commerce itself.   *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18, 23; *Cleveland, &c. Ry. Co.* v. *Backus,* 154 U. S. 439, 445; *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 700.

> *Writ of error dismissed.*
> *Writ of certiorari granted.*
> *Judgment affirmed.*

MR. JUSTICE HOLMES.

The question whether a seat in the New York Stock Exchange is taxable in Ohio consistently with the principles established by this Court seems to me more difficult than it does to my brethren.   All rights are intangible personal relations between the subject and the object of them created by law.   But it is established that it is not enough that the subject, the owner of the right, is within the power of the taxing State.   He cannot be taxed for land situated elsewhere, and the same is true of personal

property permanently out of the jurisdiction. It does not matter, I take it, whether the interest is legal or equitable, or what the machinery by which it is reached, but the question is whether the object of the right is so local in its foundation and prime meaning that it should stand like an interest in land. If left to myself I should have thought that the foundation and substance of the plaintiff's right was the right of himself and his associates personally to enter the New York Stock Exchange building and to do business there. I should have thought that all the rest was incidental to that and that that on its face was localized in New York. If so, it does not matter whether it is real or personal property or that it adds to the owner's credit and facilities in Ohio. The same would be true of a great estate in New York land.

As my brothers VAN DEVANTER and McREYNOLDS share the same doubts it has seemed to us proper that they should be expressed.