LOCAL 333B, UNITED MARINE DIVISION OF INTERNATIONAL LONGSHOREMEN'S ASS'N (A. F. L.) et al. v. BATTLE, Governor of Virginia.

Civ. A. No. 1346.

United States District Court
E. D. Virginia.

Argued July 20, 1951.

Decided Aug. 3, 1951.

Sidney H. Kelsey, Norfolk, Va., for plaintiffs.

J. Lindsay Almond, Jr., Atty. Gen. of Virginia, and Henry T. Wickham, Asst. Atty. Gen. of Virginia, for defendant.

Before DOBIE, Circuit Judge, HUTCHESON, Chief Judge, and BRYAN, District Judge.

DOBIE, Circuit Judge.

Local 333B (hereinafter referred to as the Union) is an unincorporated labor union, chartered by the International Longshoremen's Association and the American Federation of Labor. The Union is the certified collective bargaining agent of the employees of the Virginia Ferry Corporation (hereinafter referred to as Ferry), which is a private Virginia corporation operating ferries as a link in interstate commerce, over Chesapeake Bay (all in Virginia) between Little Creek and Kiptopeke Beach.

The Union instituted this civil action in the United States District Court for the Eastern District of Virginia against John S. Battle as Governor of Virginia.

We append complainants' prayer for relief: "Wherefore your petitioners respectfuly pray that a three judge court pursuant to 28 U.S.C.A. §§ 2281, 2283 and 2284 be immediately convened to prevent further irreparable injury to their rights, and to consider and determine and declare the Virginia Public Utilities Labor Act, Title 40 Sec. 75 through 95 of the Code of Virginia (1950) unconstitutional and invalid as conflicting with the federal Constitution and Acts of Congress mentioned; that preference for hearing over other cases on the docket, in accordance with statute be given this cause; that the Hon. John S. Battle, Governor of the Commonwealth of Virginia, who is empowered in said State act to administer, carry out and enforce the same, be summoned to answer this petition, and that he be enjoined and restrained from the enforcement, operation

or execution of said State statute on the grounds of its unconstitutionality; that an interlocutory injunction be granted with all possible speed, to be later made permanent, to attain the ends and purposes mentioned; that pursuant to Title 28 U.S.C.A. § 2283, in order to protect and effectuate the judgment of the three judge court, an injunction may be granted enjoining the Court of Law and Chancery of the City of Norfolk, Virginia, from taking any further action with respect to this matter; your complainants further respectfully pray that they be granted such other further and different relief as the nature of their case requires or to justice shall be deemed meet."

Differences had arisen between Ferry and the Union as to wages and working conditions. The Union reported this to Governor Battle, who, under the Virginia Public Utilities Labor Act (hereinafter referred to as the Act), requested a conference between Ferry and the Union. After two conferences had resulted in a complete failure to reach an agreement, Governor Battle requested that Union and Ferry submit their differences to arbitration. This request was refused by both parties. The Act does not require arbitration.

In the Court of Law and Chancery of the City of Norfolk, Virginia, Ferry on May 17, 1951, obtained an injunction against the Union requiring compliance with the Act. Later, that Court found the Union and two of its officers, Everton and Owens, guilty of criminal contempt in violating this injunction. The Union was fined $7,500; Everton was fined $1,000 and sentenced to ten days confinement in jail; Owens was fined $750 and sentenced to five days in jail. These fines and jail sentences were stayed by the Court, so that the contempt cases might be taken to the Supreme Court of Appeals of Virginia.

The case was orally argued before the three-judge federal District Court on the defendant's motion to dismiss. We think this motion must be granted.

■■■ It is elementary that, when a state statute is attacked on the ground that it contravenes the federal Constitution or a federal statute, there is a strong presumption in favor of the validity of the state statute. Equally clear is it that federal courts are loath to pass on a federal constitutional question when there is in the case another non-constitutional question which may well dispose of the case in the state court. Spector Motor Service, Inc., v. McLaughlin, 323 U.S. 101, 104, 65 S.Ct. 152, 89 L.Ed. 101. Proper comity between state and federal courts also requires that a federal court should interfere with proceedings in a state court, even when the federal court has that power, only upon a clear and convincing showing of the clear-cut necessity for the exercise of that power. Such a showing, we think, is absent from the case before us.

■■■ The clearest ground justifying our view that complainants' civil action must be dismissed is that plaintiffs have an altogether adequate remedy in the state courts. The Union in both the injunction suit and the contempt proceedings has recourse to the Supreme Court of Appeals of Virginia. If that Court should uphold the state authority as valid, against complainants' claim of invalidity on federal grounds, an appeal lies to the Supreme Court of the United States.

Headnote 4, in Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 294, 63 S.Ct. 1070, 87 L.Ed. 1407, reads: "In a suit in the federal district court against a state officer charged with the administration and enforcement of the Louisiana Unemployment Compensation Law, [LSA-R.S. 23:1471 et seq.], brought by plaintiffs engaged in navigation and operation of vessels used in improving navigable waters of the State, and praying a declaratory judgment that the state law as applied to them and their employees is unconstitutional, it was the duty of the court to withhold such relief, it appearing that under the state law a taxpayer who pays a challenged tax to the appropriate state officer may maintain a suit for reimbursement."

In this same case, 319 U.S. at pages 297, 298, 63 S.Ct. at page 1072, Chief Justice Stone said:

"This withholding of extraordinary relief by courts having authority to give it is

not a denial of the jurisdiction which Congress has conferred on the federal courts, or of the settled rule that the measure of inadequacy of the plaintiff's legal remedy is the legal remedy afforded by the federal not the state courts. Stratton v. St. Louis S. W. Ry. Co., 284 U.S. 530, 533, 534, 52 S.Ct. 222, 223, 76 L.Ed. 465; Di Giovanni v. Camden Ins. Ass'n, 296 U.S. 64, 69, 56 S.Ct. 1, 4, 80 L.Ed. 47. On the contrary, it is but a recognition that the jurisdiction conferred on the federal courts embraces suits in equity as well as at law, and that a federal court of equity, which may in an appropriate case refuse to give its special protection to private rights when the exercise of its jurisdiction would be prejudicial to the public interest (United States ex rel. Greathouse v. Dern, 289 U.S. 352, 359, 360, 53 S.Ct. 614, 617, 77 L.Ed. 1250; Virginian Ry. Co. v. System Federation, 300 U.S. 515, 549–553, 57 S.Ct. 592, 600, 602, 81 L.Ed. 789), should stay its hand in the public interest when it reasonably appears that private interests will not suffer. See Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 385, 79 L.Ed. 841, and cases cited.

"It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states."

Chief Justice Vinson, in Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 349, 71 S.Ct. 762, 768, 95 L.Ed. 1002, stated: "As adequate state court review of an administrative order based upon predominantly local factors is available to appellee, intervention of a federal court is not necessary for the protection of federal rights. Equitable relief may be granted only when the District Court, in its sound discretion exercised with the 'scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts,' is convinced that the asserted federal right cannot be preserved except by granting the 'extraordinary relief of an injunction in the federal courts.' Considering that '[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies,' the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court in this case. Whatever rights appellee may have are to be pursued through the state courts." See, also, Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Railroad Commission of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368, Id., 311 U.S. 614, 615, 61 S.Ct. 66, 85 L.Ed. 390; Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 76 L.Ed. 447.

There is a serious question whether the Act applies to ferries in Virginia. Title 33, Chapter 3, Articles 1–6, specifically cover the subject in great detail. Whether these provisions are solely controlling on ferries so as to exempt ferries from the Act is a question of interpretation of Virginia statutes. The interpretation of those statutes by the Supreme Court of Appeals of Virginia is final and binding, for the purposes of this case, on the federal courts. Thus far, this question has not been passed upon by that Court. Our Court would indeed be in an anomalous position were we to grant the relief sought here, only to find later that the Act is declared by the highest Court in Virginia to be utterly inapplicable to ferries.

Said Mr. Justice Douglas in American Federation of Labor v. Watson, 327 U.S. 582, 595–596, 66 S.Ct. 761, 767, 90 L.Ed. 873: "As we have said, the District Court passed on the merits of the controversy. In doing so at this stage of the litigation, we think it did not follow the proper course. The merits involve substantial constitutional issues concerning the meaning of a new provision of the Florida constitution which, so far as we are advised, has never been construed by the Florida courts. Those courts have the final say as to its meaning. When authoritatively construed, it may or may not have the meaning or force which appellees now assume that it has. In absence of an authoritative interpretation, it is impossible to know with certainty what constitutional issues will finally emerge. What would now be written on

the constitutional questions might therefore turn out to be an academic and needless dissertation." And, in Shipman v. DuPre, 339 U.S. 321, 322, 70 S.Ct. 640, 641, 94 L.Ed. 877, the brief per curiam opinion states: "From the papers submitted on appeal, it does not appear that the statutory sections in question have as yet been construed by the state courts. We are therefore of opinion that the District Court erred in disposing of the complaint on the merits."

We advert briefly to certain other features of the case before us. The ferries are now being operated by the State Highway Commissioner, upon the written approval of Governor Battle, under the special Virginia statutes (mentioned above) dealing with ferries, and not under the Public Utilities Act, the enforcement of which we are asked to enjoin. The Highway Commissioner has filed an affidavit in which he states:

"5. That on July 10, 1951 almost all of the licensed and unlicensed personnel of the Virginia Ferry Corporation requested employment with the Commonwealth of Virginia and at this time are employed in the operation of the ferry between Little Creek and Kiptopeke, Virginia; and

"6. That neither he nor his agents have at any time interfered with the right of Local 333B, United Marine Division of International Longshoremen's Association (A. F. L.), or the licensed and unlicensed personnel of the Virginia Ferry Corporation, to strike or bargain collectively with representatives of the Virginia Ferry Corporation."

Governor Battle has filed an affidavit setting forth:

"7. That, except as set forth above, he has not administered or carried out the provisions of the so-called Virginia Public Utilities Act (Article 4, Chapter 4 of Title 40 of the Code of Virginia) in the present controversy between Local 333B, United Marine Division of I. L. A. (AFL) and the Virginia Ferry Corporation;

"8. That he is not administering, carrying out or enforcing the so-called Virginia Public Utilities Act as averred by the complainants in the above mentioned case and does not intend to administer, carry out or enforce it against the said complainants in their present controversy with the said Virginia Ferry Corporation."

The State was neither a party to, nor represented in, the injunction proceedings in the state Court. The State was represented in the contempt proceedings instituted to vindicate the dignity and authority of the state court. Neither Ferry nor the State Highway Commissioner is a party to the instant case before us.

Under the "clean hands" doctrine, the position of the Union is not strong. The Union seeks an injunction from us when it and its officers have been adjudged guilty of criminal contempt in violating the state court's injunction. The Union has thus violated a solemn court decree on the chance that the decree, though then in full force, might later be held to be erroneous and invalid. Said Chief Justice Taft, in Howat v. State of Kansas, 258 U.S. 181, 189–190, 42 S.Ct. 277, 280, 66 L.Ed. 550: "An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 450, 31 S.Ct. 492, 55 L.Ed. 797; Toy Toy v. Hopkins, 212 U.S. 542, 548, 29 S.Ct. 416, 53 L.Ed. 644. See also United States v. Shipp, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319."

■ The practice should not be encouraged of litigants violating an apparently valid injunction of a state court and then rushing into a three-judge federal court for another injunction which would

relieve the litigant of all the consequences of the litigant's seemingly contemptuous acts.

We do not think, as defendant here contends, that the case before us is entirely moot. There is, however, grave doubt that, if we refuse the injunction sought, irreparable injury will result to the Union.

The suggestion is made that we retain this case upon our docket until the Virginia Supreme Court of Appeals has interpreted the Virginia statutes here involved. That practice has been followed in a number of cases but we do not feel it is proper here. As we have pointed out, the Union has a complete and adequate remedy in the form of a review by the Virginia Supreme Court of Appeals of both the injunction proceeding and the contempt proceeding in the lower state court, and, should the high Court of Virginia sustain the state authority, an appeal is available to the United States Supreme Court.

For the reasons stated, the civil action of the complainants is dismissed.

Dismissed.

STERLING HUTCHESON, Chief Judge, and BRYAN, District Judge, concur.