WEST VIRGINIA MOTOR TRUCK
ASS'N, Inc.

v.

PUBLIC SERVICE COMMISSION OF
WEST VIRGINIA et al.

Civ. No. 1525.

United States District Court
S. D. West Virginia,
Charleston Division.

July 27, 1954.

Judgment Affirmed Nov. 15, 1954.
See 75 S.Ct. 125.

David G. MacDonald, Washington, D. C. for West Virginia Motor Truck Ass'n, Inc.; Smith Transfer Corp., and Bell Lines, Inc. ·

John C. White, Charleston, W. Va. for C & D Motor Delivery Co.; Greig Freight Lines; Keystone Motor Exp.; Point Pleasant Transp. Co.; Pone Fork Truck Lines; Merchants Dispatch; and Grubb Motor Freight.

Amos Bolen (Fitzpatrick, Marshall, Huddleston & Bolen), Huntington, W. Va., Richard T. Wilson, Jr., Richmond, Va., for defendant Chesapeake & O. Ry. Co.

John G. Fox, Atty. Gen., Robert E. Magnuson, Asst. Atty. Gen., for Public Service Commission of W. Va.

Before DOBIE, Circuit Judge, and WATKINS and MOORE, District Judges.

DOBIE, Circuit Judge.

Plaintiffs, West Virginia Motor Truck Association and various motor truck operators in West Virginia, filed this civil action in the United States District Court for the Southern District of West Virginia, to enjoin and restrain the enforcement and execution of a certain order of the Public Service Commission of West Virginia (hereinafter called the Commission).

Chesapeake and Ohio Railway Company (hereinafter called C. & O.) filed an application with the Commission seeking a certificate of public convenience and

necessity authorizing operation as a motor common carrier of property in intrastate commerce over certain routes and between specified points in West Virginia. The Commission, under its interpretation of Article 2, Section 5, of the West Virginia Motor Carrier Law, Code, 24A–2–5, denied the application. For this denial, the Commission gave as its reasons, among others: "In the majority of instances, applicant's proposed service would be practically identical to that now rendered by the existing motor carriers and that said service is not of such character as to be non-competitive with said motor carriers. * * * The evidence offered by the applicant in this case * * * is not sufficient to show that the motor vehicle service of the protestants is inadequate or insufficient."

On appeal, the Supreme Court of Appeals of West Virginia reversed the decision of the Commission and remanded the case to the Commission with directions that a certificate be issued to C. & O. Chesapeake & O. R. Co. v. Public Service Comm., 81 S.E.2d 700. A petition for rehearing was subsequently denied by the West Virginia Supreme Court of Appeals. The certificate now attacked before us was, accordingly, issued to C. & O. by the Commission. It seems that the federal question, which forms the basis for the instant civil action, was not raised in the original appeal to the Supreme Court of Appeals of West Virginia; but it was specifically raised in the petition for rehearing filed in, and denied by, that Court.

Plaintiffs, with the exception of West Virginia Motor Truck Association, allege that Article 2, Section 5, of the Motor Carrier Law of West Virginia, as that section is interpreted by the Supreme Court of Appeals of West Virginia, denies to them and all intrastate motor common carriers similarly situated the equal protection of the laws in violation of the provisions of Amendment XIV to the Constitution of the United States, in that:

(a) Railroad applicants for motor carrier certificates of public convenience and necessity are relieved of the burden of establishing as a condition precedent to the issuance of such a certificate that the service furnished by existing transportation facilities is not reasonably efficient and adequate.

(b) Motor carrier applicants for enlargement, modification, or extension of their certificates of public convenience and necessity are required to demonstrate as a condition precedent to the issuance of such certificate that the service furnished by existing transportation facilities (including rail facilities) is not reasonably efficient and adequate.

(c) Under motor common carrier certificates of public convenience and necessity, existing motor common carriers no longer have the protection of law against unwarranted invasions of unneeded rail-owned motor carrier operations over routes and in areas presently being served adequately, efficiently, and satisfactorily by motor carrier. Rail operations over rail lines, however, notwithstanding the essentially different character of service involved, enjoy the continued protection against the institution of new motor carrier services where inadequacy in rail service is not shown by a motor carrier applicant.

(d) There is here an unreasonable and arbitrary discrimination in favor of railroad applicants for motor carrier operating authority and against motor carrier applicants for such authority.

Plaintiffs further allege that the order of the Public Service Commission of West Virginia is in contravention of the equal protection clause of Amendment XIV to the Constitution of the United States in that the order granting the rail application was issued in the absence of any showing by the railroad applicant that the service furnished by existing transportation facilities is not reasonably adequate and efficient as is required of all other applicants for motor carrier operating authority. Thus the action of the Public Service Commission discriminates unreasonably, arbitrarily, and unlawfully in favor of railroad applicants for West Virginia intrastate motor com-

mon carrier operating authority. The issuance of the certificate to the rail applicant on the lesser measure or lower standards of proof of public convenience and necessity constitutes preferential treatment for railroad applicants for motor carrier authority and unjustly discriminates against motor common carriers.

Plaintiffs, with the exception of West Virginia Motor Truck Association, further aver that their respective certificates of public convenience and necessity authorizing intrastate motor common carrier operations in West Virginia are things of great value and as such constitute an important property right within the protection of the Fourteenth Amendment to the Constitution of the United States.

Plaintiffs further aver that Section 5 of Article 2 of the West Virginia Motor Carrier Act as construed by the Supreme Court of Appeals of West Virginia and as applied by the Commission involves a taking of their property without due process of law in that:

(a) It permits the authorization of rail-operated motor carrier service directly competitive with theirs in the absence of a showing of inadequacy or inefficiency in existing services.

(b) The institution of an unneeded new competitive service will necessarily deprive them of business which they would otherwise obtain from shippers and receivers of freight moving in intrastate commerce in West Virginia.

Plaintiffs further contend that if C. & O. exercises the authority issued to it in the order of the Commission, plaintiffs will be subjected to irreparable loss and damage through the diversion of traffic from their systems to the motor carrier operations to be instituted by C. & O.; that the continuation of certain plaintiffs' motor carrier operations would be seriously threatened and all plaintiffs would suffer the loss of substantial revenue from intrastate motor carrier operations in West Virginia; that such loss of West Virginia intrastate traffic will nec-

essarily adversely affect the ability of certain plaintiffs to continue operations in interstate as well as intrastate operations, and will seriously impair their ability adequately and efficiently to serve the shipping public; and that unless this Court grants the relief herein prayed for, plaintiffs will suffer irreparable injury for which they have no adequate remedy at law.

Two defenses to this civil action have been set up: (1) *Res adjudicata;* and (2) Lack of merit in the federal constitutional questions set up by the plaintiffs. Either defense, if valid, would constitute a complete bar. Since we think both of these defenses are valid, the instant civil action must be dismissed.

We consider first the plea of *res adjudicata,* which involves several phases. As we have indicated, the federal constitutional questions were not urged in the original appeal to the Supreme Court of Appeals of West Virginia, but they were raised on the petition for rehearing filed in that Court. Thus, C. & O. insists, this denial of the petition for rehearing was *res adjudicata* as to these federal questions and the only recourse then left to plaintiffs was to seek relief at the hands of the United States Supreme Court.

> "Again, the federal question should be raised before the decision of the case by the highest state court, and the raising of the question on motion for rehearing in that court will not suffice when this motion is merely denied; but, if on such motion this court specially passes on the federal question, then it is regarded as being properly raised." Dobie on Federal Procedure, page 888.

See, also, Citizens National Bank of Cincinnati v. Durr, 257 U.S. 99, 42 S.Ct. 15, 66 L.Ed. 149; Barbour v. State of Georgia, 249 U.S. 454, 39 S.Ct. 316, 63 L.Ed. 704; St. Louis & San Francisco Railway Co. v. Shepherd, 240 U.S. 240, 36 S.Ct. 274, 60 L.Ed. 622; Mallers v. Commercial Loan & Trust Co., 216 U.S. 613, 30 S.Ct. 438, 54 L.Ed. 638; Sullivan

v. State of Texas, 207 U.S. 416, 28 S.Ct. 215, 52 L.Ed. 274; Leigh v. Green, 193 U.S. 79, 24 S.Ct. 390, 48 L.Ed. 623; Mallett v. State of North Carolina, 181 U.S. 589, 21 S.Ct. 730, 45 L.Ed. 1015; Pim v. City of St. Louis, 165 U.S. 273, 17 S.Ct. 322, 41 L.Ed. 714; Sayward v. Denny, 158 U.S. 180, 15 S.Ct. 777, 39 L.Ed. 941; Miller v. State of Texas, 153 U.S. 535, 14 S.Ct. 874, 38 L.Ed. 812.

In the instant case, the Supreme Court of Appeals of West Virginia necessarily had before it the federal questions here involved when that Court denied the rehearing; yet, that Court merely denied the rehearing, without any formal opinion, in these words:

"The petition for rehearing and reargument filed in this case, having been maturely considered, a majority of the Court is of opinion to, and doth hereby deny the prayer of the petition and doth order that the final order entered herein be made absolute and certified as heretofore directed. Judges Browning and Riley would grant."

■ It is elementary that by the very words of the Statute, 28 U.S.C.A. § 1257, the review by the United States Supreme Court of the decisions of State courts is limited to a "final judgment or decree;" and the Supreme Court has repeatedly made it clear that it will not exercise its jurisdiction here by piecemeal review. See, North Carolina Railway Co. v. Story, 268 U.S. 288, 291, 45 S.Ct. 531, 69 L.Ed. 959; Georgia Railway & Power Co. v. Town of Decatur, 262 U.S. 432, 43 S.Ct. 613, 67 L.Ed. 1065; Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144; Andrews v. Virginian Railway Co., 248 U.S. 272, 39 S.Ct. 101, 63 L.Ed. 236.

What constitutes, in this connection, such a "final judgment or decree" is often a question of no little difficulty. Oft quoted here is the statement of Chief Justice Waite in Bostwick v. Brinkerhoff, 106 U.S. 3, 4, 1 S.Ct. 15, 16, 27 L.Ed. 73:

"The rule is well settled and of long standing that a judgment or decree to be final, within the meaning of that term as used in the acts of congress giving this court jurisdiction on appeals and writs of error, must terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already rendered."

See, also, Bruce v. Tobin, 245 U.S. 18, 19, 38 S.Ct. 7, 62 L.Ed. 123; Coe v. Armour Fertilizer Works, 237 U.S. 413, 418, 419, 35 S.Ct. 625, 59 L.Ed. 1027; Haseltine v. Central National Bank, 183 U.S. 130, 22 S.Ct. 49, 46 L.Ed. 117; Houston v. Moore, 3 Wheat. 433, 4 L.Ed. 428.

■ Applying this test to the case before us, we think the decision of the West Virginia Supreme Court of Appeals was not a final judgment or decree and hence was not reviewable by the United States Supreme Court. The West Virginia Supreme Court, while it reversed the Commission, merely decided that C. & O. was entitled to *a* certificate. Several questions were deliberately left open for decision by the Commission. From the opinion of the West Virginia Supreme Court, for example, we quote:

"During the course of the hearing, applicant was permitted to amend its application, seeking further authority to handle railway express in its truck operation, in the handling of less than carload freight, between its freight station at Charleston and certain other named railway stations within the Kanawha District. * * * The question is left open for initial consideration by the commission.

"Applicant, at the Public Service Commission hearing, indicated its willingness, upon the granting of the authority sought, to operate as owner the proposed truck service, or to lease such operations to some responsible person, satisfactory to the

Public Service Commission, as the commission might order. This question also is left open for initial consideration by the commission." [81 S.E.2d 713.]

And the opinion concludes:

"* * * this proceeding must be remanded to the Public Service Commission with directions that such certificate be granted, with the imposition of such conditions and restrictions as deemed by the Public Service Commission to be necessary or proper in the public interest, in accord with the conclusions reached in this opinion."

It is thus apparent that until the Commission, in compliance with the mandate of the West Virginia Supreme Court, issued the certificate, C. & O. was quite in the dark as to what it could or could not do. Again, the Commission might have imposed restrictions so severe that the certificate would have been valueless to C. & O. and would have done little or no harm to the plaintiffs herein. Only upon the issuance of the certificate did the rights of the parties become fixed and definite with any degree of precision and certainty.

From the opinion of Mr. Justice Frankfurter in the leading case of Republic Natural Gas Co. v. State of Oklahoma, 334 U.S. 62, 68, 69, 68 S.Ct. 972, 976, 92 L.Ed. 1212, we quote:

"The requirement of finality has not been met merely because the major issues in a case have been decided and only a few loose ends remain to be tied up * * *. The order of the Oklahoma Corporation Commission, as affirmed below, terminates some but not all issues in this proceeding. * * * Certainly what remains to be done cannot be characterized as merely 'ministerial.'"

The mandate of the Supreme Court of West Virginia entrusted to the Commission many questions of primary importance. It was the Commission's duty, under the mandate, to determine the nature and extent of the certificate subsequently to be awarded, together with what limitations and restrictions were to be imposed in the certificate. Clearly, in determining these questions, the Commission was acting in anything but a purely ministerial capacity.

Immediately upon the issuance of the certificate to C. & O., however, all doubts and clouds were cleared away. And it is this certificate which plaintiffs now attack on federal constitutional grounds before our three-judge Court. If plaintiffs disliked this certificate, as this proceeding before us indicates they did, the way was clear for them to take the case to the highest West Virginia Court; then, if they secured no relief, they could ask a review of the federal questions at the hands of the United States Supreme Court. This they failed to do; instead they came to us.

■■ The doctrine of *res adjudicata* is broad enough to include not only questions actually settled by a decision but also questions which might have been, and should have been, raised and settled, though they were not actually raised. We, thus, think that the federal questions involved before us need not be determined. The doctrine of *res adjudicata* is a complete bar.

In the leading case of Angel v. Bullington, 330 U.S. 183, at pages 190 and 191, 67 S.Ct. 657, 661, 91 L.Ed. 832, Mr. Justice Frankfurter said:

"It is a misconception of *res judicata* to assume that the doctrine does not come into operation if a court has not passed on the 'merits' in the sense of the ultimate substantive issues of a litigation. An adjudication declining to reach such ultimate substantive issues may bar a second attempt to reach them in another court of the State. * * *

"The merits of this controversy were adjudicated by the North Carolina Supreme Court since that court, or this Court on appeal, might have decided that the North Carolina statute did not bar Bullington's first

action. The North Carolina statute might have been found unconstitutional. Federal issues were thus involved in the adjudication by the North Carolina Supreme Court. Bullington knew that there were federal issues in the State suit because he raised them. He was then content to drop them and let the intermediate adjudication stand. Now he wants an encore."

In the case of Local 333B, etc. v. Battle, D.C.Va.1951, 101 F.Supp. 650, a suit was instituted in the District Court, asking that the Virginia Public Utilities Labor Act be declared invalid, as contravening the Federal Constitution, and to enjoin enforcement of the Act. In its opinion, the three-judge court said, 101 F.Supp. at page 652:

"The clearest ground justifying our view that complainants' civil action must be dismissed is that plaintiffs have an altogether adequate remedy in the state courts. The Union in both the injunction suit and the contempt proceedings has recourse to the Supreme Court of Appeals of Virginia. If that Court should uphold the state authority as valid, against complainants' claim of invalidity on federal grounds, an appeal lies to the Supreme Court of the United States."

This case was affirmed by the Supreme Court of the United States, 342 U.S. 880, 72 S.Ct. 178, 96 L.Ed. 661.

See, also, State Corporation Commission of Kansas v. Wichita Gas Co., 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500; American Surety Co. v. Baldwin, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231; Grubb v. Public Utilities Commission of Ohio, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972; Railroad and Warehouse Commission of Minnesota v. Duluth Street Railway Co., 273 U.S. 625, 47 S.Ct. 489, 71 L.Ed. 807; Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659; Napa Valley Electric Co. v. Board of Railroad Commission of California, 251 U.S. 366, 40 S.Ct. 174, 64 L. Ed. 310; Bacon v. Rutland Railway Co.,

232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538; Detroit & Mackinac Railway Co. v. Michigan Railroad Commission, 235 U.S. 402, 35 S.Ct. 126, 59 L.Ed. 288; Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150; New York State Electric and Gas Corporation v. Public Service Commission of New York, 2 Cir., 102 F.2d 453; Lehigh Valley Railway Co. of New Jersey v. Martin, 3 Cir., 100 F. 2d 139; Ann Arbor Railway Co. v. Michigan Public Service Commission, D.C., 91 F.Supp. 668; Consolidated Freightways v. Railroad Commission of California, D.C., 36 F.Supp. 269; Baker Driveaway Co. v. Hamilton, D.C., 29 F. Supp. 693; Rosen v. Lutz, D.C., 7 F. Supp. 755.

■ We think we are on safer and firmer ground when we dismiss the instant civil action on the merits. We find no valid federal constitutional ground for assailing the order of the Commission granting the certificate to C. & O. That order neither denies to plaintiffs the equal protection of the laws, nor does it deprive them of property without due process of law.

■ Of course we are bound by the interpretation of the West Virginia Motor Carrier Act, Code, 24A–1–1 et seq., by the Supreme Court of Appeals of West Virginia. The question then before us is whether that Act, as construed by that Court, and as enforced by the Commission, contravenes the Constitution of the United States. We think this question must be answered in the negative.

The Commission's certificate permitted C. & O. "to operate as a common carrier by motor vehicle in the transportation of commodities generally moving in less than carload service" over certain specified routes. This certificate concluded:

"The authority heretofore granted is subject to the following restrictions and conditions:

(1) The service by motor vehicle to be performed by The Chesapeake and Ohio Railway Company shall be limited to service which is auxiliary

to or supplemental of, its rail service.

(2) The Chesapeake and Ohio Railway Company shall operate said service only between its station buildings on its rail lines, and to other buildings along the above described routes to which rail service has been or can be rendered.

(3) All shipments transported by The Chesapeake and Ohio Railway Company pursuant to the authority herein contained shall move on rail or railway express bills of lading and at rates provided in rail or railway express tariffs.

(4) The service by motor vehicle to be performed pursuant to the authority herein contained shall be performed directly by The Chesapeake and Ohio Railway Company, and not by a lessee of said Company."

The contentions of plaintiffs specifically are that the West Virginia Supreme Court's interpretation of the West Virginia Motor Carrier Act results in the establishment of two totally distinct standards of proof to be applied by the Commission when determining public convenience and necessity in motor carrier applications—the standard to apply to depend upon whether the applicant is or is not a railroad. When the applicant is a railroad, a lesser measure or lower standard of proof will be necessary, i. e., no showing of inadequacy of existing services to be required. Where, on the other hand, the applicant is a non-carrier, seeking to begin operations, or a motor carrier seeking to extend operations, the full test of public convenience and necessity is to be met, including an affirmative demonstration that existing carriers are unable to render the services proposed. Such a construction of the statute voids the statute as discriminatory in that it grants to one class an immunity protection, benefit or privilege not granted to others, without a rational basis in fact to support the classification and the resultant inequalities.

In Norfolk Southern Bus Corporation v. United States, D.C., 96 F.Supp. 756, 760, it was stated (with citations): "There was no necessity for the [Interstate Commerce] Commission to make any specific finding concerning the inadequacy of the existing service."

The classification here in question had indeed a rational basis in fact; it was in no proper sense arbitrary, artificial or capricious. C. & O. sought here no new service, no permission to operate in new fields. It had for years served these neighborhoods by rail. It sought merely a modified method of performing this same service—by motor truck operations auxiliary to, or supplemental of, its rail service. This service was rather rigidly limited, as we have indicated, by the restrictions and conditions imposed on the service in the Commission's certificate.

The Interstate Commerce Commission granted C. & O. a certificate of convenience and necessity covering the same service involved in the instant civil action. The Chesapeake and Ohio Railway Company, Extension—West Virginia, Docket I. C. C. No. MC–109867 (Sub. 4). From the report of the Examiner in that proceeding, we quote:

"The examiner is not impressed with the reasons advanced by protestants for the denial of the application. Applicant has not abandoned less-than-carload service and it should not be denied the right to improve such service when it elects to do so. The application is not one in which authority is sought to provide an all-motor service the same as provided by the existing motor carriers. The proposed operation is designed solely to improve applicant's present less-than-truckload service in the territory. The present service is slow, inefficient and expensive. And it is not satisfactory to applicant and the shipping public. The authority sought will not enable applicant to enter a new field, but will permit it to substitute for the present service a new efficient form of

service which will be faster and more economical in the transportation of less-than-carload rail traffic which applicant has been and is obligated to transport. The examiner does not believe it to be the intent of the Interstate Commerce Act to vest in one class of carriers the right to require the continuation by another of an inefficient and more costly method of operation. Nor is the examiner convinced that existing motor carriers will be materially affected by the proposed improvement in applicant's merchandise service. The preponderant portion, if not all, the interstate traffic which applicant will handle in the proposed operation will be traffic which applicant has been transporting because it will move by railroad beyond Charleston or Huntington and from origin to destination on rail billing and at rail rates. It is not believed that the proposed coordinated service will result in such increased interstate traffic that it would seriously endanger the operations of existing motor carriers. In any event, the public should not be deprived of the benefit of an improved service simply because it might divert some traffic from other carriers."

In cases of this type, the paramount consideration before Commissions, both State and federal, is the public convenience. When such convenience is enhanced by a service for which permission is sought in a proper application, the certificate is usually granted, though harm may thereby result to existing competing carriers.

The conclusion that we have reached seems to find ample support in decisions of the United States Supreme Court. Thus in the leading case of Interstate Commerce Commission v. Parker, 326 U.S. 60, 69–70, 65 S.Ct. 1490, 1495, 89 L.Ed. 2051, Mr. Justice Reed said:

"The contention of appellees, protestant motor carriers, is that since no evidence was offered as to the inadequacy of the presently duly cer-tificated motor carriers to serve the railroad's need, there was a failure of proof as to convenience of and necessity for a new motor truck operation in the territory. Public convenience and necessity should be interpreted so as to secure for the Nation the broad aims of the Interstate Commerce Act of 1940. Cf. New England Divisions Case, Akron, C. & Y. R. Co. v. United States, 261 U.S. 184, 189, 43 S.Ct. 270, 273, 67 L.Ed. 605 [609]; Interstate Commerce Commission v. Railway Labor [Executives] Ass'n, 315 U.S. 373, 376, 377, 62 S.Ct. 717, 719, 720, 86 L.Ed. 904 [907, 908]; United States v. Lowden, 308 U.S. 225, 230, 60 S. Ct. 248, 251, 84 L.Ed. 208 [213]; Texas & N. O. R. Co. v. Northside Belt R. Co. 276 U.S. 475, 479, 48 S. Ct. 361, 362, 72 L.Ed. 661 [663]. In protestant's view a certificate of convenience and necessity should not be granted to railroads for motor truck operation when existing motor carriers are capable of rendering the same service. Appellants take the position that this precise issue need not be decided in this case. They look upon the application as asking for authority to improve 'an existing service.' We think that it was for a motor service to improve an existing rail service. Consequently, the issuance of the certificate is subject to all the requirements of any other application for a certificate for operation of motor lines. Since, however, on adequate evidence the Commission found that the motor service sought was of a different character from the existing motor service and not directly competitive or unduly prejudicial to the already certified motor carriers, 42 M.C.C. 725, 726, we hold that the Commission had statutory authority and administrative discretion to order the certificate to issue. The public is entitled to the benefits of improved transportation. Where that improvement depends in the Commis-

sion's judgment upon a unified and limited rail-truck operation which is found not 'unduly prejudicial' to motor carrier operations, the Commission may authorize the certificate even though the existing carriers might arrange to furnish successfully the projected service."

In Thomson v. United States, 321 U.S. 19, 20–21, 64 S.Ct. 392, 393, 88 L.Ed. 513, Mr. Justice Murphy stated:

"The essential facts are clear. The Chicago and North Western Railway Company, hereinafter referred to as the railroad, has extensive mileage in nine western states and is a large carrier of freight in less than carload lots. Prior to and since the statutory 'grandfather' date of June 1, 1935, it has supplemented its rail freight service by providing motor vehicle service between various freight stations on its rail lines. There are twenty-three such motor vehicle routes on highways parallel with and roughly adjacent to the railroad's lines. The motor trucks transport less than carload lots of freight in complete coordination with the rail service. The railroad instituted this additional method of transportation in order to furnish an improved and more convenient freight service to the public in certain areas of light traffic and in order to curtail car mileage and way-freight service. Motor vehicle transportation, in other words, is merely a new method of carrying on part of its all-rail freight business in which it has been engaged for many years."

See, also Norwalk Truck Line Co. v. Public Utilities Commission of Ohio, 148 Ohio St. 247, 74 N.E.2d 328.

The closest case in point decided by a State Court seems to be Central Truck Lines v. Railroad Commission of Florida, 133 Fla. 190, 182 So. 783, at page 785, in which Mr. Justice Terrell said:

"In fine, when the limitations under which the certificate is granted are taken into consideration, the act does nothing more than enable the railroad company to supplement its freight and express service with a more economic and expeditious truck service, that is to say, to co-ordinate its rail and truck service as to freight and express handled by rail. It is not a case in which a new carrier is attempting to enter a field already served. * * * In this we see no discrimination or denial of equal protection."

We discuss briefly three cases on which plaintiffs strongly rely. In Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, at page 501, 61 S.Ct. 643, at page 645, 85 L.Ed. 971, the Supreme Court remanded the case to the State Court, and Mr. Justice Frankfurter in his opinion remarked: "These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary."

In Smith v. Cahoon, 283 U.S. 553, 567, 51 S.Ct. 582, 587, 75 L.Ed. 1264, Chief Justice Hughes said: "But, in establishing such a regulation, there does not appear to be the slightest justification for making a distinction between those who carry for hire farm products, or milk or butter, or fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities." The classification there had no rational relation to the purpose for which it was made. That case is indeed a far cry from the case before us.

In Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 523, 49 S.Ct. 235, 238, 73 L.Ed. 483, Mr. Justice Sutherland stated: "By the terms of the statute here under consideration, appellant, an individual, is forbidden to engage in business [the ginning of seed cotton] unless he can first show a public necessity in the locality for it; while corporations organized under the act of 1919, however

numerous, may engage in the same business in the same locality no matter how extensively the public necessity may be exceeded." The classification there attempted (between individuals and corporations) was held to be clearly arbitrary because the classification was based upon no real or substantial differences reasonably related to the subject of the legislation. Surely, the Frost case lends little help to the plaintiffs in our case.

██ While we do not base our decision primarily on that principle, we think the result reached is a happy one in that it respects that spirit of comity which decries undue interference between federal courts and the courts of a State. We are here asked, in practical effect, to review a decision of the Supreme Court of Appeals of West Virginia—a function which normally belongs, and should belong, to only one Court in our judicial system, the Supreme Court of the United States.

The civil action of plaintiffs, for the reasons stated, is dismissed.

Dismissed.